38710. NORRIS v. THE STATE.

</div>

WELTNER, Justice.

Marie A. C. Norris was indicted for shooting and killing her husband, Lieutenant Colonel Jimmy R. Norris, with a handgun. She appeals from her subsequent conviction of murder and sentence to life imprisonment.

1. Appellant contends that the trial court erred in excusing a juror after learning that the juror was a convicted felon. After the jury and two alternates had been selected, the State informed the court, during a hearing on a motion to suppress certain evidence, that one of the jurors was a convicted felon. The juror, having been brought before the court, acknowledged the felony conviction. The court then, on its own motion, excused the juror and replaced him with the first alternate. The State consented to this ruling, but the defense

objected, contending that the juror was *prima facie* competent and that the defense was entitled to question him further as to the status of his conviction.

The trial court may, on its own motion, and in the exercise of sound discretion, excuse an incompetent juror at any time before evidence is given. The trial court did not abuse its discretion in excusing the juror. *Dodys v. State,* 73 Ga. App. 483 (1) (37 SE2d 173) (1946).

Nor was any reversible error committed in the selection of two alternate jurors. Appellant contends that Code Ann. § 59-907 was violated in that the State and the defense were allowed only one and two peremptory challenges, respectively.[1] The defense made no objection to the reduced number of strikes and thus waived its right to appeal the trial court's ruling; furthermore, the error, if any, was harmless.

2. The trial court did not err in failing to order a psychiatric evaluation with respect to appellant's competency to stand trial, prior to trial.

Some three weeks prior to trial the court, pursuant to a motion filed by the State, issued an *ex parte* order requiring appellant to undergo a psychiatric examination. Defense counsel moved to stay the order, contending that the order should not have issued *ex parte,* that to require appellant to submit to an examination would violate her right to remain silent under the Fifth Amendment, and that the order was premature inasmuch as no special plea of insanity had been filed on appellant's behalf. At a hearing on this motion defense counsel argued that there was no evidence which would justify subjecting appellant to a psychiatric evaluation; however, both parties agreed to a court-ordered evaluation of appellant, with the stipulation, agreed to by the State, that the State would not attempt to discuss the results of the evaluation with the examining psychiatrist prior to trial. The psychiatrist was to have inquired as to whether appellant was competent to stand trial and whether she was sane or insane at the time of the offense.[2]

---

[1] Code Ann. § 59-907 mandates that the State shall be entitled to as many peremptory challenges as there are alternate jurors to be selected (in this case, two) and the defense shall have twice that number (four). The trial court halved the number of strikes for each side after the State pointed out that there were only six potential jurors from which the two alternates could be selected.

[2] It should be noted that at the hearing on the defense motion the trial court expressed its determination to comply with Drope v. Missouri, 420 U. S. 162 (95 SC 896, 43 LE2d 103) (1975) wherein it was held that, in some cases, a trial judge has a duty, on his own motion, to order a psychiatric examination to determine a defendant's competency to stand trial. See Division 3, infra.

The scheduled examination did not take place, as the State next moved to stay the order, urging the court to reconsider the stipulation concerning the results of the examination. At a hearing on this motion, defense counsel stated that he would have no objection to a competency evaluation, but objected, on Fifth Amendment grounds, to any evaluation of her mental capacity at the time of the offense. The court concluded that its order should be modified to require only an examination as to competency to stand trial, at which point the State suggested that, if the defense did not intend to offer a special plea of insanity, a competency evaluation would not be necessary. Defense counsel then stated that the defense had no intention of filing a special plea prior to trial, that, as far as he knew, she was competent to stand trial, but that he could not predict how she would hold up under the stress of the trial itself. The trial court then rescinded all orders for a psychiatric evaluation, requesting that ". . . if either side knows any reason why the defendant should be examined prior to trial, you are to call this to the attention of the court."

Code Ann. § 27-1502 provides a statutory method for determining, by special jury trial, the mental competency of a criminal defendant to stand trial. As defense counsel declined to file a special plea of insanity, the only inquiry becomes whether the trial court erred in failing to order, on its own motion, a competency evaluation prior to trial. See *Taylor v. State,* 245 Ga. 501 (1) (265 SE2d 803) (1980). The record shows that no evidence was presented to the court to indicate a need for a competency evaluation other than the circumstances of the killing itself, the State's theory being that appellant shot and killed her husband and then attempted to make it appear a suicide. Defense counsel stated at a hearing that the nature of the crime did not warrant a competency evaluation. The trial court made an exceedingly diligent effort to protect the appellant's rights in this matter, and we find no abuse of discretion. See *Taylor,* supra; *Lewis v. State,* 239 Ga. 732 (2) (238 SE2d 892) (1977).

3. Appellant contends that the trial court erred in failing to halt the trial and order a hearing as to appellant's competency to stand trial, or a psychiatric evaluation of her competency. Appellant further contends that the court erred in ruling her competent to stand trial.

During testimony on the second day of the trial defense counsel informed the court that appellant was sick. She was taken out of the courtroom and examined by a court-appointed physician. The physician reported to the Court shortly thereafter that appellant was in acute distress, hyperventilating, "scared to death," and exhibited symptoms of a peptic ulcer. He recommended that she be

hospitalized overnight for testing and observation, and the court agreed.

The following morning the physician reported his findings to the court. He stated that the results of all tests were completely normal, and that, in his opinion, there was no physical reason why she could not continue with the trial. He indicated that she was under extreme mental distress and that he had given her some medication to calm her down; and that ". . . she is in a condition where she might take some drastic means," and should be kept under close surveillance by "somebody responsible." Questioned by the court with respect to the effects of the medication on the appellant, he stated that it would not impair her ability to cooperate with counsel or give testimony at trial. The court then revoked her bond to insure her safety and ruled her competent to stand trial.

Prior to the resumption of testimony defense counsel moved for a postponement of the trial so that he could present an oral motion for a special plea of insanity. In overruling the motion, the court noted that appellant had been out on bond awaiting trial for almost a year, yet no evidence of any medical problems had been brought to the court's attention prior to trial. The court found ". . . no basis at all for terminating the trial," observing that it is not unusual for one on trial for murder to exhibit signs of stress, and that the doctor had testified that nothing was physically wrong with appellant. As to the doctor's expression of concern that appellant might take some drastic action, the court stated that it had revoked her bond as a means of insuring her safety.

On the afternoon of the same day, appellant took the stand and gave lengthy and coherent (if not convincing) testimony.

In Drope v. Missouri, 420 U. S. 162 (95 SC 896, 43 LE2d 103) (1975), the Supreme Court stated: "[A]s to federal cases, we have approved a test of incompetence which seeks to ascertain whether a criminal defendant 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as a factual understanding of the proceedings against him.' Dusky v. United States, 362 U. S. at 402.

"In Pate v. Robinson, 383 U. S. 375 (1966), we held that the failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial.

". . . The import of our decision in Pate v. Robinson is that evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but that even one of these factors standing alone may, in some circumstances,

be sufficient." 420 U. S. at 172, 180.

Appellant raised the defense of insanity at the time of the offense and offered the testimony of two psychiatrists in support of that defense. The psychiatrists gave no opinion as to appellant's competence to stand trial, and the trial judge made his ruling on appellant's competency without the benefit of their testimony, which came later in the trial. We will review their testimony as to appellant's history of mental problems and her general mental state to determine whether, in combination with her demeanor at trial, these factors raised a sufficient doubt as to her competence at trial to require the trial judge to exercise his discretion and continue the trial pending a competency evaluation.

The psychiatrists testified that appellant's medical history showed multiple references to hyperventilation, combined with pain for which no organic basis could be found, and that this was a sign of a long-standing emotional disturbance. They testified that, based on their interviews with her, she had been subject to considerable physical abuse in her marriage and showed symptoms consistent with the Battered Wife Syndrome. Testing showed that her I. Q. was in the normal range but that she suffered from a mild organic brain dysfunction. A personality test indicated that she was moderately to severely depressed and somewhat anxious, and some characteristics indicated a personality which tended to be very dependent and showed some hysterical features. Both doctors believed that she was telling the truth when she testified that she had no memory of most of the events surrounding the homicide; they stated that, in their opinion, she was in a dissociated state at the time, possibly due to a blow on the head (which appellant alleged was caused by the victim on the night preceding the early morning shooting), and that in such a state she could not know the difference between right and wrong. Their testimony also revealed that she had been hospitalized shortly before the killing with physical complaints for which no organic basis was found, and that she had been treated for "acute severe depression" while awaiting trial on bond.

Although this testimony reveals a history of mental problems, we must consider whether it raised any doubt as to her ability to understand the nature and object of the proceedings going on against her, to comprehend her own condition in reference to such proceedings, and to render her attorneys such assistance as a proper defense to the indictment preferred against her demanded. *Crawford v. State,* 240 Ga. 321 (2) (240 SE2d 824) (1977); *Chenault v. State,* 234 Ga. 216 (1) (215 SE2d 223) (1975). Nothing in the testimony of the psychiatrists indicates that her mental capacity failed to meet this test at any time, other than at the time of the killing, when she was

said to be in a dissociated state. Her medical history referred largely to incidents of apparent physical illness with no organic basis, such as was displayed at trial. References to depression would not seem to reflect any lack of capacity to understand or communicate. One doctor stated that her apparent mild organic brain dysfunction was such as might cause spells of forgetfulness or symptoms similar to senility.

Balanced against this is the considerable, if not conclusive, evidence of her competency, as reflected in her demeanor at trial. Prior to trial her attorneys expressed no doubts as to her competency at that time. No change in her condition appeared until her physical illness (apparently mental in origin) manifested itself at trial. The examination and report of the court-appointed physician, together with the lengthy and coherent testimony which she gave shortly thereafter, removed any doubt as to her mental capacity at the time of trial. Based on the extensive pretrial hearings as to the necessity for a competency evaluation, appellant's demeanor at trial, and the lack of psychiatric evidence that she, at any time (other than the time of the offense), was unable to comprehend or communicate effectively, we conclude that the trial court did not abuse his discretion in ruling her competent to stand trial and in failing to halt the trial pending further inquiry. *Jones v. State,* 246 Ga. 109 (4) (269 SE2d 6) (1980); *Wells v. State,* 210 Ga. 422 (1) (80 SE2d 153) (1954).

4. Appellant contends that the trial court erred in not allowing the jury to hear evidence concerning medication administered to her while hospitalized during the trial, on the ground that she raised the defense of insanity and the medication may have affected her demeanor at trial.

After appellant had been hospitalized overnight, she appeared to sleep through the following morning's testimony. Defense counsel attempted to question the court-appointed physician and his own expert witnesses concerning the effects of any medication appellant received at the hospital. Both sides were allowed to question the court-appointed physician, out of the jury's presence, concerning the effects of the medication. The doctor testified that the medication should have worn off by the time the trial got under way that morning.[3] Appellant, asked about her behavior on the morning in question, first testified that she had been given medication which made her drowsy; later she stated that she had not been able to sleep in the hospital on the previous night. Defense counsel was not allowed

---

[3] He testified that early in the morning he had ordered 50 milligrams of Demerol and five milligrams of Valium to be given her intravenously.

to question his own experts as to this matter, and the trial court instructed the jury to disregard any evidence of medication received while in the hospital.

Appellant cites authority to the effect that the demeanor at trial of a criminal defendant is of probative value with respect to the defense of insanity, and that, if the defendant is under medication which may affect his demeanor, the jury is entitled to be so informed. See e.g., 4 Wigmore, Evidence (3d Ed., 1940), § 1160; In re Pray, 336 A2d 174 (Vt. 1975). Although we apparently have not considered this question in Georgia, we need not do so now, as any error in this respect was harmless beyond a reasonable doubt. The court-appointed physician testified that the medication should not have affected appellant's demeanor at trial; the only effect alleged is drowsiness on one morning of the trial; and the jury heard appellant testify that she had received medication which made her drowsy (although they were later instructed to disregard this testimony).

5. In view of our holding in Division 3, supra, we conclude that the trial court did not abuse its discretion in not allowing defense counsel, after appellant's hospitalization, to make any further showing as to appellant's competency to stand trial.

6. The trial court did not err in declining to instruct the jury as to the law of self-defense and justification.

In her testimony at trial, appellant stated that she came home late on the night before the killing and received a blow on the head in the course of an argument with the victim. He gave her a codeine tablet and she went to bed. She woke up once in the night and took another tablet. The next thing she remembered was realizing, in the early hours of the morning, that she was outside in the yard playing with a dog. She went into the house and found the victim's body.[4] She further stated, unequivocally, that she did not kill her husband.

The victim was found lying in the hallway with the murder weapon in his hand, safety on. He had been shot several times. There was evidence that a struggle took place in the course of the killing.

Appellant's denial of the killing was inconsistent with a theory of self-defense. *Thomas v. State,* 240 Ga. 441 (2) (241 SE2d 194) (1978).

---

[4] On the day of the killing appellant gave an entirely different version of the events to police, in which she saw the victim when he woke up early that morning. While he was in the bathroom she went to the kitchen and began to make breakfast and do some laundering. She went back to check on her husband and found him dead.

During the course of questioning by the police, she changed her story several times.

Other evidence of a struggle, indicating that the victim resisted his assailant, was insufficient to require a charge on self-defense, in the face of appellant's denial of the act.

7. It follows that the exclusion of evidence of the victim's character did not undermine appellant's theory of self-defense.

8. Appellant contends that the trial court erred in excluding evidence of the victim's previous acts of violence toward her, and other character evidence, on the ground that it was admissible in support of her defense of insanity. Appellant cites no authority for this proposition, and we know of none. Nevertheless, the jury heard a great deal of evidence concerning the violent character of the victim. Appellant alleges that the trial court instructed the jury to disregard such evidence, citing a portion of the transcript where the trial court stated, out of the presence of the jury, that it would instruct the jury to disregard evidence of the victim's character. Appellant fails to point out where such instruction was actually given, if at all, and thus no possible error appears for our consideration.

The trial court did exclude other evidence of the victim's character, tending to show that he was obsessed with sexual matters and inclined to certain sexually oriented aberrations. We fail to see how such evidence was relevant to appellant's state of mind at the time of the offense, with respect to the defense of insanity. We conclude that no admissible evidence was withheld from the jury.

9. Defense counsel attempted to question his own expert witness concerning medication given appellant while she was hospitalized during trial (see Division 4). The trial judge instructed the jury ". . . that you will disregard any questions and any answers that have been given up to this point, in this respect, regarding medication of this Defendant, in any hospital, if she's been in the hospital within the last twenty-four hours or any other period." Appellant contends that she was hospitalized some three days prior to the killing and that she was given medication which she was taking at the time that she gave statements to the police.

While the instruction to the jury appears overbroad, it is clear from its context that the court was concerned with excluding evidence of medication which appellant was given when she was hospitalized during trial. The trial judge instructed the jury as to the admissibility of her statements to police, and never attempted to exclude evidence of any medications which she was taking when she made the statements. Finally, there is no indication that, when she gave her statements to the police, appellant was still under the influence of any medication which had been given her during her previous stay in the hospital, which was the gravamen of the trial court's instruction. Thus, any error in this respect was harmless

beyond a reasonable doubt.

10. The trial court did not abuse its discretion in submitting appellant's statements to police to the jury, after a full Jackson-Denno hearing, and with appropriate instruction.

11. We have reviewed each and every enumeration of error and find them to be without merit.

*Judgment affirmed. All the Justices concur, except Smith, J., who dissents as to Divisions 3, 4, 5 and 9 and the judgment.*

DECIDED OCTOBER 5, 1982 —
REHEARING DENIED OCTOBER 19, 1982.

*Calhoun & Associates, George M. Hubbard, John R. Calhoun, Kenneth D. Kondritzer,* for appellant.

*Dupont K. Cheney, District Attorney, Harrison Kohler, Assistant District Attorney, Michael J. Bowers, Attorney General, Virginia H. Jeffries, Staff Assistant Attorney General,* for appellee.