PINK GREEN *et al.*, plaintiffs in error, *vs.* THE STATE OF GEORGIA, defendant in error.

1. After a witness has detailed the facts, to ask him, "was that in Randolph county" is not objectionable on the ground that it is a leading question. (R.)
2. A witness may not be impeached by simply showing that he had made a statement not material to the issue. (R.)
3. It is not error in the Court below to direct the testimony to be taken down in a case where the law does not require it.
4. Nor is it error to interrupt counsel misstating the evidence to the jury, and correct the statement of what was sworn to by the witnesses on the trial.
5. Nor is it error to read over the evidence of the witnesses, on the request of the jury, as to such facts inquired of; and such action by the Court is not in violation of section 3183 of the Code, which prohibits the Judge from stating to the jury "what has or has not been proved as to the guilt of the deceased," but it is within the power of the Court to direct the proper statement of the evidence; and presenting the truth of what a witness swore, to the jury, is distinguishable from expressing an opinion as to a fact proven, by the Court.

Green *et al. vs.* The State of Georgia.

Criminal law. Conduct of Judge. Evidence. Practice. Before Judge HARRELL. Randolph Superior Court. May Term, 1871.

Pink Green *et al.*, were jointly indicted for assault and battery upon one Conyers, a negro. The Court, upon its own motion, had the testimony taken down in writing by an attorney, in open Court. When Conyers had detailed the facts he was asked, " Was that in Randolph county ?" This was objected to as a leading question. The objection was overruled. Conyers testified that a crowd came to his house, took him out and whipped him cruelly. It appeared that one of the party was a bailiff, and had a warrant for one Mark Moses and the defendants. Conyers had given Moses , notice, and thus prevented his arrest, and for this they whipped Conyers. To impeach Conyers and lay the foundation for contradicting Conyers, (as they say in their motion) defendant's counsel asked him if he did not see Mark Moses that night. The Court would not allow the question answered. The only matter of doubt was as to whether this crowd was the defendants. To show their identity Conyers testified that he saw the crowd come from Mr. Vinson's; Mr. Vinson's son said defendants were there at the time stated, looking for Mark Moses ; and Mr. Vinson, Sr., testified that after they failed to find Mark Moses they went off and came back, and said they had whipped one of Mark Moses' spies.

In commenting on the evidence, counsel for prisoners said that Vinson said that " one of the boys " made said statement. The Judge interrupted him by saying that he had no idea that he wished to misstate the evidence, but that Vinson, Sr., said " *they* told him so," and read from the written evidence in support of his assertion. Counsel contended that an officer, in executing a warrant, had a right to remove obstacles that might come in his way, to break open a house or commit a battery, if necessary.

In alluding to said position of counsel, the Court in

charging the jury said: "An officer can, under his power to remove obstructions to an arrest, break open a house, commit an assault and battery, and in some cases kill the party obstructing the process of the law; but if counsel meant to maintain that an officer had authority to whip a person after he has been arrested, it is without law or reason to support it; while an officer has said powers, if he, after arrest, whip or beat a person, he is guilty of a crime; the Legislature has passed a special law against the mistreatment of prisoners."

The Court charged the jury also, that even if Conyers acted as a spy for Moses, and enabled him to avoid arrest, that did not justify the whipping.

The jury retired, and afterwards came back to receive an additional charge, and one of the jury desired to know what was the evidence as to the connection "of an old man," about whom Conyers testified, with the affair. The Judge read that part of the evidence from said evidence written down as aforesaid. The jury found the defendants guilty.

Defendant's counsel moved for a new trial upon the grounds that the verdict was contrary to the evidence, etc.; because the Court erred in allowing said leading question to be answered; in refusing to allow Conyers examined as to seeing Moses that night; in requiring the evidence taken down in writing; by stating what Vinson, Sr., said when testifying, and reading his evidence from said writing; in charging the jury as he did; in reading to the jury what was taken down as the evidence concerning "an old man," and last, in his remarks as to counsel's position as to the right of an officer, when interfered with in executing process, in that he gave reasons and argument to show the unreasonableness of said position, instead of simply stating it was not law. The Court refused a new trial, and that is assigned as error.

WOOTTEN & HOYLE; R. F. LYON, for plaintiffs in error.

WEST HARRIS, J. W. TAYLOR, Solicitor General, for the State. Leading questions discretionary : Revised Code, section 3809. No impeachment by irrelevant evidence : Revised Code, section 3815. If counsel misstate evidence Court should correct him : 11 Georgia Reports, 253. Sayings of one confederate good against all : 17 Georgia Reports, 356 ; 1 Gr. on Ev., 156. Court should charge on points made in argument : 4 Georgia Reports, 287. The Court did not say what was *proved* but what a witness testified : 25 Georgia Reports, 520. Even if error in charge, verdict is right : 14 Georgia Reports, 55.

LOCHRANE, Chief Justice.

This was an indictment against certain parties for the offense of assault and battery, upon the trial of which the plaintiffs in error were convicted, and the motion was made for a new trial upon eight grounds, which we will dispose of in their order. First, because the jury found contrary to the evidence, and second, against the weight of the evidence. In the opinion of the Court, the evidence in this case was sufficient to sustain the verdict. In fact, it was conclusive of the guilt of the parties, and stands unredeemed by a single, solitary excuse or provocation, and the act was wanton in every aspect in which the Court may view it.

1. The third ground of exception is in relation to the Court below allowing a leading question, in which we find there is no error.

2. And we also concur with the Court below in overruling the fourth ground of error assigned, under section 3815 of the Code.

3. The fifth ground of error assigned is, that the Court erred in ordering or requesting an attorney of said Court, to take down the testimony in said case, the same not being required by law. We merely notice this assignment of error, not for the purpose solemnly to adjudicate it, but for the pur-

pose of stating that no officer is clothed with more incidental powers in Georgia, than a Judge of the Superior Court; that it is the highest office of original jurisdiction known to the Constitution and laws; that none is more responsible; none higher in all the administrative elements of justice, and the right of the Court to have testimony taken down in any case, is a question purely with himself, and not the subject-matter of criticism or cavil elsewhere. It is a commendable practice approved by this Court, though it requires no sanction by such approval.

4. The next ground of error is, that the Court interrupted the counsel in misstating the testimony, and read from said brief of evidence what was sworn. Code, section 3183, declares " it is error for any or either of the Judges of the Superior Courts of this State, in any case, whether civil or criminal, or in equity, during its progress or in his charge to the jury, to express or intimate what has or has not been proved, or as to the guilt of the accused." The effect of this section is misconceived, if it is held to apply to every act of the Judge in getting the testimony properly before the jury. Will it be held in the progress of the case, where counsel differ as to what has been sworn, that the Court may not correct error, by recalling the witness, if possible, or by stating from his notes or his remembrance, what a witness swore? Is it not his duty to preserve the decorum of justice, and may he not prevent perversion or misstatement of evidence? To give this section such a construction, would be to destroy the power of the Court. The intention of the law is to prevent the Court from usurping the province of the jury, and alleging the fact to be proven which is controverted, but not to inhibit him from putting before the jury the truth of what a witness swore. The law must have a reasonable intendment; and under the decision in 11th Georgia, 256, it is laid down that it is the duty of the Court not to suffer the proof to be perverted, either intentionally or through inadvertence; and the decision of the Court is, it is

not only the privilege of the Court, but its solemn duty, to interrupt counsel when misstating the testimony to the jury. Any other rule would be violative of the proper government of the Courts, and leave the Judge powerless, which could not be the intention of the law.

5. The next ground of error is predicated upon the action of the Judge, on the request of the jury, desiring to know the evidence in relation to the connection of an old man with the transaction, when the Court read to them that portion of the evidence referring thereto. This Court in *Wade vs. The State,* upon which the error assigned was that the Court erred in calling the jury from their room, after they had retired to consider their verdict, into the Court room, and reading over to them the written testimony as taken down by the Court, without the consent of the prisoner's counsel, and while the prisoner was absent: *Held,* " This was clearly error. The Court had no more authority, under the law, to read over testimony to the jury, affecting the life or liberty of the defendant, in his absence, than it has to examine the witnesses in relation thereto, in his absence. The defendant has not only the right to be confronted with his witnesses, but he has also the right to be *present,* and see and hear all the *proceedings* which are had against him on the trial before the Court. It is said the presumption must be, that the Court read over the testimony correctly, and read over all that was delivered against the defendant; therefore he was not injured. The answer is, that it was the *legal right and privilege of the defendant* to have been *present in Court* when this proceeding was had before the jury, in relation to the testimony delivered against him; and he is to be considered as standing upon *all his legal rights,* waiving none of them." This case is distinguishable from the case at bar, as the prisoner was, in contemplation of law, present, and the evidence read over was in relation to one not upon trial, and did not, in the opinion of the Court, affect the merits of the case; besides, we are not prepared to say that the Judge may not, at the request

of the jury, in the presence of the prisoner, read over to them a portion of the testimony taken down under his order. Under the facts in this case, however, we are satisfied that this act by the Court is insufficient to set aside a verdict so overwhelmingly sustained by the law and facts.

Judgment affirmed.