## 51219. LENTILE v. THE STATE.

STOLZ, Judge.

The defendant appeals from his conviction of four counts of violations of the Georgia Controlled Substances Act. He was sentenced to 6 years on Count 1 and 2 years each on Counts 2, 3 and 4.

The evidence showed that at 3:15 p.m., while executing a search warrant in a house, a G.B.I. agent answered a telephone call from the defendant, who asked the agent (thinking him to be the resident) if he was ready to do the business they'd talked about the other night. The agent said he was ready, then the defendant, acknowledging that they shouldn't talk over the private telephone line, gave the agent the number of a club in Dublin where he could be called. The agent called him at

---

[1] *McNeill* effectively overrules our decision to the contrary in *Reed v. State,* 130 Ga. App. 659 (204 SE2d 335).

that number in about 20 minutes and they reached an agreement as to the quantity (100 pounds in three suitcases) and price of the buy. At 6:30 p.m., the agent called the defendant at the home number furnished by the latter, and got the defendant's consent for the agent's "cousin" (a fellow agent) to conduct the transaction. As planned, the agents called the defendant from Soperton (at about 8 p.m.), met the defendant at an agreed-upon rendezvous point (at about 8:20 p.m.), then followed the defendant as he led them to his home. As the agents drove up to the house at about 8:30 p.m., they observed "several" persons walking around inside the house. The defendant tried to get the agents to come inside the house with him, which they declined to do. They then exhibited their money to the defendant upon his demand. He went into his house and, after about 15 minutes, returned with one of the three suitcases, containing approximately one-third of the agreed buy of marijuana. After the suitcase had been opened, revealing the marijuana, the defendant was arrested without a warrant. Thereafter, two persons fled the house, one of whom, Mr. Ellington, was apprehended on the screen porch, and the agents entered the house, where they arrested the defendant's wife (in which room is not revealed). The three arrested persons were handcuffed in the hallway and the agents commenced a warrantless search of the entire house, "looking for other people." They seized some marijuana in plain view on a bed in the back bedroom, then opened a closed metal box nearby and seized quantities of LSD, PCP and marijuana therein. Also seized were two open suitcases containing the balance of the marijuana buy, one located in the same bedroom and the other in the dining room. A general search of the house, including closets and closed boxes, revealed quantities of contraband, which were seized.

1. Enumerated errors 2 through 12 pertain to the denial of the motion to suppress the evidence.

Since the defendant committed the offense of unlawful possession of marijuana with intent to distribute, in the officers' presence, the state was not required to obtain an arrest warrant. Code § 27-207. Nor were they required to obtain a search warrant prior to

their arrival at the house, because the rendezvous point was not agreed upon until approximately an hour and a half beforehand, and it does not appear that the agents knew in advance that the defendant planned to proceed from the rendezvous point to his residence.

However, search of the house was not justified as incident to the defendant's lawful arrest outside the house. Code Ann. § 27-301 (Ga. L. 1966, p. 567) provides that "[w]hen a lawful arrest is effected a peace officer may reasonably search the person arrested *and the area within such person's immediate presence*" (emphasis supplied) for the four designated purposes. See also Chimel v. California, 395 U. S. 752 (89 SC 2034, 23 LE2d 685); Vale v. Louisiana, 399 U. S. 30 (90 SC 1969, 26 LE2d 409); United States v. Basurto, 497 F2d 781. Under the holding in United States v. Bustamante-Gamez, 488 F2d 4 (1973) (cert. denied, 416 U. S. 970, 94 SC 1993, 40 LE2d 559), however, a warrantless search was justified by the exigency of the circumstances — that several persons were in the house before the defendant's arrest, two persons were seen fleeing the house after the defendant's arrest, and the defendant had brought out only a third of the agreed-on buy of marijuana — giving the officers reason to believe that their presence and identity had been detected, and that there was a substantial possibility that the remaining occupant or occupants would attempt to escape or destroy evidence, set up resistance to an eventual entry, or plan a desperate flight.

Once lawfully within the house, the officers were authorized to make a search of the entire house for the limited purpose of securing it, i.e., discovering the presence of all occupants and eliminating the possibility of harm to the officers and the destruction of evidence. See United States v. Bustamante-Gamez, supra, and Code Ann. § 27-301, supra. Once the defendant, his wife, and Ellington were under arrest, the only remaining valid ground for a search of the entire house was for the purpose of discovering the presence of any possible remaining occupants. The search revealed none.

A search of the entire house for contraband was not justified as incident to the arrest of Ellington and the defendant's wife. Ellington was arrested on the screen

porch; no contraband was found there within the area of his immediate presence. The state, having the burden of proof, failed to show in which room of the house the defendant's wife was arrested; hence, the area within her immediate presence which could be searched, cannot be determined.

"However, 'A police officer is free to use and seize what he sees *in plain sight* if he is at a place where he is entitled to be. Ker v. California, 374 U. S. 23 (83 SC 1623, 10 LE2d 726); Harris v. United States, 390 U. S. 234 (88 SC 992, 19 LE2d 1067).' *Lewis v. State,* 126 Ga. App. 123, 126 (190 SE2d 123)." (Emphasis supplied.) *Brewer v. State,* 129 Ga. App. 118, 119 (199 SE2d 109). The officers in the case sub judice, being entitled to go throughout the house for the limited purpose of securing it, were therefore free to use and seize the marijuana in plain sight on the bed and in the two open suitcases. They were not authorized to open up closed containers or otherwise discover contraband which was not in plain view, and this is true whether they were conducting the warrantless search incident to the lawful arrest of the occupants or under the exigencies of the situation, as approved in the Bustamante-Gamez case, supra. "[T]he 'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges." Coolidge v. New Hampshire, 403 U. S. 443, 466 (91 SC 2022, 29 LE2d 564). "The limits on the doctrine are implicit in the statement of its rationale. The first of those is that plain view *alone* is never enough to justify the warrantless seizure of evidence. This is simply a corrollary of the familiar principle . . . that no amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances'. . . The second limitation is that the discovery of evidence in plain view must be inadvertent." Coolidge v. N. H., supra, pp. 468, 469. After it was determined that all of the occupants of the house plus the defendant were in custody, no exigency existed which would justify a general search of the entire house. See *Brewer v. State,* 129 Ga. App. 118, 120, supra. At that point, the officers could, and should, have procured a search warrant to discover whatever contraband or other

evidence may have been on the premises, not in plain view.

Accordingly, the motion to suppress should have been sustained with regard to all evidence introduced which was not found in plain view, i.e., everything except the marijuana on the bed and in the two open suitcases.

2. Where the evidence seized in the search was locked in a room in the courthouse by a member of the sheriff's department and appeared to be in the same place, position and condition when re-obtained by the agent for the trial, the chain of custody of such evidence was not broken merely because the agent did not know the name of the person who had access to the locked room or whether there were other keys to the room. The law does not require the state, in order to render the evidence admissible, to negate all possibilities of tampering or error while the evidence is in official custody, but merely to establish that it is reasonably certain that substitution, alteration, or tampering did not occur. *Meadows v. State,* 135 Ga. App. 758 (219 SE2d 174) and cits.

3. Enumerated error 13 is the judge's failure to declare a mistrial on the ground that he had challenged as unsupported by the evidence, before the jury, defendant's counsel's argument that the agents could have stuck the $1,200 confiscated at the defendant's home in their pockets. The trial judge was within his rights to confine the argument to matters material to the issue (*Wheeler v. State,* 4 Ga. App. 325 (3) (61 SE 409)) and to correct a misstatement of what the evidence showed (*Green v. State,* 43 Ga. 368 (4)). (The testimony was that the money was turned over to the State Revenue Department.) Moreover, the currency was among the items which were not in plain view when seized, as to the conviction for which we are reversing. For the latter reason, enumerated error 14 — the denial of a mistrial for the judge's comments to the jury "correcting" the impression given them by defense counsel's argument that the search was illegal — need not be ruled on.

4. There was no error, as contended in enumerated error 15, in failing to specifically instruct the jury that the state had the burden of proving beyond a reasonable doubt that the defendant had not been entrapped as

defined in Code Ann. § 26-905 (Ga. L. 1968, pp. 1249, 1274). *State v. McNeill,* 234 Ga. 696 (217 SE2d 281); *Webb v. State,* 136 Ga. App. 90 (3).

5. The verdict and judgment were authorized by the evidence insofar as Count 1, unlawful possession of marijuana with intent to distribute, is concerned, since the evidence shows that the marijuana was in plain sight and lawfully seized. The convictions of Counts 2, 3 and 4, for possession of PCP, LSD and cocaine, must be set aside, since the evidence shows that they were not in plain sight, hence were unlawfully seized.

The conviction of Count 1 is affirmed, the convictions of Counts 2, 3 and 4 are reversed, and the case is remanded to the trial court for resentencing on Count 1, taking into consideration the fact that the defendant stands convicted of one offense, rather than four.

*Judgment affirmed in part, reversed in part, and remanded. Deen, P. J., and Evans, J., concur.*

Argued September 29, 1975 — Decided November 5, 1975 — Rehearing denied November 18, 1975 —

*Spivey, Carlton, Clark & Merrill, John B. Spivey, Charles B. Merrill, Jr., M. O. Strickland,* for appellant.

*R. Reginald Thompson, District Attorney,* for appellee.

