63923. ELLIS v. THE STATE.
63924. HOSKENS v. THE STATE.
63999. RICKMAN v. THE STATE.

SHULMAN, Presiding Judge.

Appellants were tried together and convicted of possession of cocaine. Each now appeals from the judgment entered on the jury's verdict.

The following facts could be adduced from the evidence presented at trial. Using an informant as an intermediary, an undercover police officer made arrangements to purchase a kilogram (2.2 lb.) of cocaine from appellant Hoskens. After meeting Hoskens at a Delk Road motel, the undercover officer and Hoskens proceeded to the Best Western Motel on Interstate 20 to rendezvous with people arriving from Alabama for the deal. The officer and Hoskens' female companion rented adjoining rooms at the motel (Rooms 105 and 107). Surveillance teams stationed near the Best Western observed appellants Rickman and Ellis arrive in a car with Alabama tags and park next to Hoskens' automobile. The latest arriving appellants went into the motel, returned to the car, retrieved from it a brown briefcase, and reentered the motel.

Meanwhile, the undercover officer, having seen one pound of the cocaine, having been told the remainder of the kilogram was "next door," and having been satisfied with the cocaine sample provided to him by Hoskens, left Room 107 of the motel and went to his parked automobile to obtain the money for the drug purchase. This conduct was the prearranged signal for the surveillance teams to assemble for the imminent arrests. The police officers gained access to Room 107 through the use of the undercover officer's room key, arrested Hoskens and confiscated a pound of cocaine. Upon knocking and

announcing their identity as police officers at Room 105, they were met with the sounds of running water and a repeatedly flushed toilet. Using the manager's pass key, the officers entered that room to find Ellis standing by the door and Rickman in the bathroom with an empty plastic bag. Scrapings from the toilet bowl and the residue from the plastic bag were identified as cocaine. A search of Room 105 uncovered a glass vial containing what was later identified as cocaine from between the bed's mattress and box springs, and a plastic bag containing a white powdery substance later identified as cocaine from a shaving bag.

1. Appellant Hoskens, who pled a defense of entrapment at trial, now asserts that the verdict is contrary to the law. "Entrapment exists where the idea and intention of the commission of the crime originated with a government officer or employee, or with an agent of either, and he, by undue persuasion, incitement, or deceitful means, induced the accused to commit the act which the accused would not have committed except for the conduct of such officer." Code Ann. § 26-905. Hoskens maintains that the state failed to prove he was predisposed to commit the crime. However, Hoskens himself testified that a police informant's alleged offer of $1,500 caused him to become involved in the purported sale of cocaine. "[T]he mere fact that the defendant was persuaded (if he was) by a friend to engage in practices he knew to be criminal simply to 'make a lot of money' does not constitute entrapment; if it did, practically every offender could find and rely on such incidents in his own past." *Leonardi v. State,* 154 Ga. App. 402, 405 (268 SE2d 380). Hoskens' assertion of the general grounds is without merit.

2. Appellants Rickman and Ellis appeal from the denial of their motion to suppress evidence discovered pursuant to warrantless searches of Rooms 105 and 107 following their warrantless arrests.

An officer may make a warrantless arrest "if the offense is committed in his presence, or the offender is endeavoring to escape . . . or for other cause there is likely to be failure of justice for want of an officer to issue a warrant." Code Ann. § 27-207 (a). A warrantless arrest is not violative of this statute if the officer had probable cause to make an arrest, i.e., if he knew facts and circumstances, based on reasonably trustworthy information, sufficient to warrant a prudent man to believe that the defendant had committed an offense. *Watson v. State,* 153 Ga. App. 545 (1) (265 SE2d 871). The knowledge that a pound of cocaine was in the room "next door" to Room 107; the failure of anyone to respond to police requests to enter Room 105; the continous sounds of running water and a flushing toilet; and Rickman's fully-clothed presence in a running bathtub with an empty plastic bag was ample cause to arrest appellants. It was not

error to refuse to suppress the plastic bag and its residue (later identified as cocaine) found with Rickman or the samples of white powder an officer viewed on the rim of the toilet bowl. Both were discovered in the plain view of officers who had a legal right to be where they were at the time they saw the evidence. *Brewer v. State,* 129 Ga. App. 118, 119 (199 SE2d 109).

3. Appellants Rickman and Ellis also protest the admission into evidence of a glass vial containing cocaine. The vial was discovered between the mattress and box springs of one of the beds in Room 105 by police officers conducting a search of the room subsequent to appellants' arrests. Whether or not this evidence was illegally seized is immaterial in light of the fact that the amount of legally seized contraband sufficiently supports the jury's verdict. See generally *Lentile v. State,* 136 Ga. App. 611 (1) (222 SE2d 86) where this court affirmed a conviction for possession of marijuana after suppressing some of the evidence pertaining to that charge.

4. The remaining contraband introduced at trial was discovered in Room 107 or in a blue shaving bag found in Room 105. At trial, Hoskens identified the bag as his. Since neither appellant Rickman nor appellant Ellis established that he had "a legitimate expectation of privacy" in Room 107 (rented by the undercover officer) or in Hoskens' blue shaving bag which he had left in Room 105, neither showed that his Fourth Amendment rights were violated with regard to the items seized from Room 107 and the shaving bag. Having failed to establish a violation of their Fourth Amendment rights, appellants do not have standing to challenge the constitutionality of these searches. United States v. Salvucci, 448 U. S. 83 (100 SC 2547, 65 LE2d 619).

5. Rickman and Ellis argue that warrants could have been procured by the police prior to the arrests and search. This contention is without merit. In *Lentile v. State,* supra, p. 613, "the rendezvous point was not agreed upon until approximately an hour and half beforehand, and it does not appear that the agents knew in advance that the defendant planned to proceed from the rendezvous point to his residence." That situation is analogous to the present one in that the police officers did not know beforehand that the deal would be moved to a different motel. It was not until Hoskens and the undercover officer met at the location originally agreed upon that it was decided that the sale would take place at another site. The drug purchase occurred approximately an hour and a half after the undercover officer's arrival at the second motel. As in *Lentile,* the time span was not so long as to require the procurement of a warrant.

6. Each appellant enumerates the denial of his motion for severance as error. Such a motion is committed to the sound

discretion of the trial judge, whose ruling is subject to reversal only for an abuse of discretion. *Montgomery v. State,* 156 Ga. App. 448, 452 (275 SE2d 72). "Some of the considerations for the court in exercising its discretion have emerged from the cases considering motions to sever: 1. Will the number of defendants create confusion of the evidence and law applicable to each individual defendant? 2. Is there a danger that evidence admissible against one defendant will be considered against another despite the admonitory precaution of the court? 3. Are the defenses of the defendants antagonistic to each other or to each other's rights? [Cit.] If the defendant can show the court by some facts that failure to sever will prejudice him under one or more of these considerations, his motion should probably be granted." *Cain v. State,* 235 Ga. 128, 129 (218 SE2d 856). Furthermore, "the trial court's denial of the motion to sever will not be disturbed unless the defendant can make a clear showing of prejudice. [Cits.]" *Depree v. State,* 246 Ga. 240, 241 (271 SE2d 155).

Each appellant maintains that Hoskens' assertion of the defense of entrapment was antagonistic to the pleas of not guilty propounded by Ellis and Rickman. "The mere fact that co-defendants' defenses are antagonistic is not sufficient in itself to warrant separate trials. [Cit.] A showing of harm is necessary. [Cit.]" *Cain v. State,* supra, p. 129. Each appellant complains that he was harmed by the evidence admitted against his co-defendants. We disagree.

Because Hoskens' entrapment defense required him to admit the commission of the offense with which he was charged, we are unable to find that Hoskens was prejudiced by the evidence adduced against his co-defendants. *McDonald v. State,* 156 Ga. App. 143 (5) (273 SE2d 881). Insofar as Rickman and Ellis are concerned, the evidence, as previously summarized, was sufficient for a rational trier of fact to determine beyond a reasonable doubt that Rickman and Ellis were parties to the crime. See Code Ann. § 26-801. " 'While (Code Ann. § 26-801) does not use the word "conspiracy" it is plain that it embodies the theory of conspiracy' " *(Hamby v. State,* 158 Ga. App. 265 (2) (279 SE2d 715)) and, under such a theory, "each of the acts and statements of each of the participants in the criminal enterprise was the same as if [Ellis or Rickman] had done the act or made the statement himself. Thus, whether such evidence was admitted at a severed trial or at a joint trial, the effect and impact legally is the same." *Montgomery v. State,* supra, p. 451. Consequently, none of the appellants has demonstrated harm or prejudice accruing from the denial of his motion to sever. Accordingly, the denial of the motions to sever was not error.

7. In a related enumeration, appellant Ellis asserts as error the trial court's denial of his motion to be excused from the courtroom.

Ellis made the motion after he had rested his case without presenting any evidence in his defense and prior to the presentation of a defense by appellant Hoskens.

In Georgia, a criminal defendant has a constitutional right to be present at all stages of his trial. Code Ann. § 2-111; *Wilson v. State,* 212 Ga. 73 (1) (90 SE2d 557); *Durrett v. State,* 135 Ga. App. 749 (2) (219 SE2d 9). Such a right can be waived by the defendant. See *Wilson,* supra. However, the exercise of a waiver of a constitutional right is not an absolute right, and the trial court must exercise its discretion when presented with a defendant's request to waive a constitutional right. It cannot be said that the trial court erred when it made a ruling which ensured the enforcement of the defendant's constitutional right.

8. Both Rickman and Ellis complain that the trial court's refusal to give requested instructions after the denial of their renewed motions to sever was error. Appellants sought to have the jury informed that they were not to consider against Ellis and Rickman any evidence introduced after those defendants had rested. Such a charge would have been inappropriate in light of the state's use of Code Ann. § 26-801 concerning parties to a crime. Furthermore, it was not error to refuse to give the requested instruction since the trial court could have exercised its discretion and allowed the state to reopen its case and present additional evidence. See *King v. State,* 230 Ga. 581 (3) (198 SE2d 305); *Burden v. State,* 182 Ga. 533 (3) (186 SE 555).

9. Appellants Ellis and Rickman contend that error resulted from the trial court's refusal to grant their motions for a mistrial after the jury had allegedly discussed evidence before the case had been submitted to it. Appellants' enumeration is based upon a hand-written note submitted by a juror to the trial judge on the third day of the six-day trial. The note, written on a paper towel, read: "Please clarify: 1. What is an 'agent?' 2. Are all agents police officers? The attorneys have been using the terms agent and officer interchangeably." Appellants maintain that this note is evidence that the jury improperly discussed the case prior to the close of the evidence. However, the contents of the note in no way indicate that an improper discussion had taken place, that any of the jurors had already formed an opinion on the case, or that a fair and impartial trial could not be had with this jury. "The question of whether or not to grant a mistrial lies within the sound discretion of the trial court. That decision will not be reversed on appeal absent an abuse of discretion." *Roberts v. State,* 242 Ga. 634, 636 (250 SE2d 482). No irregularity having been established and no harm having been sustained by appellants, the trial court did not abuse its broad

discretion in denying the motions for mistrial. See *Smith v. State,* 218 Ga. 216 (2c3) (126 SE2d 789); *Smith v. Blackshear,* 127 Ga. App. 610 (194 SE2d 519).

10. Appellant Hoskens claims error in the trial court's refusal to poll the jury to determine whether its members had engaged in an improper discussion of the case. Inasmuch as no irregularity in the conduct of a juror was shown to have occurred, it was not necessary to poll the jury. Since the actions of the trial court were not abusive of its authority, appellant's contention is meritless.

11. Appellants Rickman and Ellis also appeal the denial of their motions for directed verdicts of acquittal. Each appellant maintains that because the sole connection between him and the contraband was "spatial proximity," each appellant was entitled to a directed verdict of acquittal. See, e.g., *McCann v. State,* 137 Ga. App. 445 (224 SE2d 99).

"The trial court's refusal to direct a verdict of acquittal is error only where there is no conflict in the evidence and a verdict of acquittal is demanded as a matter of law. [Cits.] In reviewing the denial of a motion for directed verdict . . . the proper standard to be utilized by the appellate court is the 'any evidence' test. [Cits.]" *Sims v. State,* 242 Ga. 256, 257 (248 SE2d 651).

Our review of the trial transcript leads us to conclude that there was evidence to support the trial court's denial of the motions for directed verdict. There was testimony that the undercover police officer had been informed by Hoskens that the cocaine would be brought to the Best Western by people from Alabama; Ellis and Rickman arrived in Ellis' car (which displayed an Alabama tag), parked next to Hoskens' station wagon and proceeded to the room which Hoskens' companion had rented. They returned to the car, retrieved from it a brown briefcase which was capable of containing a kilogram of cocaine, and reentered the motel. When the police announced their identity and requested admission into the Ellis/Rickman room, the officers were greeted with the sound of a toilet being flushed repeatedly. After gaining entry to the room and overcoming Ellis' resistance, the officers apprehended appellant Rickman in the bathroom where he was holding a plastic bag which contained cocaine residue. A scraping from the commode also revealed the presence of cocaine. Inasmuch as there was testimony that appellants Rickman and Ellis were linked to the possession of the cocaine by more than "spatial proximity," the trial court did not err when it denied the motions for directed verdicts of acquittal.

12. Citing *Cunningham v. State,* 248 Ga. 835 (4) (286 SE2d 427), Rickman contends that the admission into evidence of the brown briefcase constituted reversible error. In *Cunningham,* the Supreme

Court reversed the appellant's murder conviction on the ground that two pieces of physical evidence, unconnected to the crime, were admitted into evidence and considered by the trier of fact. That holding is not applicable to the case at bar since the briefcase here was connected to the appellants: it was found in their room, appellants had been observed carrying it from Ellis' car to the motel, and it was posited that the cocaine had been transported within it. It was not error to admit it into evidence.

13. Rickman next complains that the trial court erred in charging the jury on the concept of parties to a crime because the statute (Code Ann. § 26-801) upon which the instruction was based is allegedly unconstitutional. Because appellant made no constitutional objection to either the charge or the statute at trial, we will not address his enumeration other than to note that the Supreme Court held that Code Ann. §§ 26-801 and 26-802 were not unconstitutionally vague, indefinite, and overbroad in *Wanzer v. State,* 232 Ga. 523 (6) (207 SE2d 466). *Corley v. State,* 154 Ga. App. 301 (2) (268 SE2d 76). Inasmuch as the evidence authorized a charge on parties to a crime, there was no error in so instructing the jury.

14. Appellants Hoskens and Rickman contend that a tape recording of conversations electronically transmitted by means of a "body bug" worn by the undercover officer was improperly admitted into evidence.

Rickman maintains that the trial court erred when it permitted the state to play portions of the tape recording to the jury after the court had denied appellant's motion to have the tape independently tested. Three conversations transmitted by the "body bug" were played for the jury by the state in rebuttal to appellant Hoskens' entrapment defense. In a pre-trial motion, appellant Rickman sought to have the tape independently examined to determine whether the tape had been altered and to see if inaudible portions could be made audible.

"A criminal defendant on trial for his liberty is entitled on motion timely made to have an expert of his choosing, bound by appropriate safeguards imposed by the court, examine critical evidence whose nature is subject to varying expert opinion." *Sabel v. State,* 248 Ga. 10, 17 (282 SE2d 61). Because we have concluded that the tape recording was not "critical evidence," we do not reach the question of whether it is subject to varying expert opinion, and we affirm the trial court's decisions to deny appellant's motion for an independent examination of the tape and to allow the jury to hear portions of the tape at trial.

" 'Critical evidence,' for purposes of the due process clause, is evidence that, when developed by skilled counsel and experts, could

induce a reasonable doubt in the minds of enough jurors to avoid a conviction." White v. Maggio, 556 F2d 1352, 1357 (5th Cir. 1977), cited with approval in *Sabel v. State,* supra, p. 18. The tape recording, as used, did not constitute "critical evidence" as that term has been defined, and therefore the trial court did not err in refusing to allow an independent examination of the tape. It was not error to allow the jury to hear portions of the recording. See *Tookes v. State,* 159 Ga. App. 423 (3) (283 SE2d 642).

15. Hoskens' first argument against the admission of the tape is the alleged failure of the state to lay a proper foundation for the admission of a tape recording into evidence.

The basic steps for laying the proper foundation before a tape recording is admissible at trial are set forth in *Steve M. Solomon, Jr., Inc. v. Edgar,* 92 Ga. App. 207 (3) (88 SE2d 167), and its progeny. Since police officers testified "that the tape recorder was in condition to take testimony; that the operator of it was competent; that it was authentic and correct; that it had not been changed or altered; that it had been in their custody; and who the speakers were" *(Estes v. State,* 232 Ga. 703 (4b) (208 SE2d 806)), and "[t]here was absolutely nothing to indicate that [appellants'] statements were not voluntary and of [their] own choosing" *(Brooks v. State,* 141 Ga. App. 725, 735 (234 SE2d 541)), the proper foundation was laid and it was not error to admit the tape.

16. Lastly, appellant Hoskens argues that the lack of a transcript of the portions of the tape played before the jury resulted in an incomplete record for this court to review. The record and transcript of the case, which includes the reel of tape as an exhibit thereto, have been examined by this court. Appellant's claim of an incomplete record is without merit. See *State v. Knowles,* 247 Ga. 218 (274 SE2d 468).

17. Rickman and Ellis each enumerate as error the denial of his motion for new trial. Any ground for reversal presented in those motions not discussed above must be deemed abandoned as unsupported claims of error under Court of Appeals Rule 15 (c) (2). Code Ann. § 24-3615 (c) (2).

*Judgment affirmed. Quillian, C. J., and Carley, J., concur.*

Decided October 18, 1982 —
Rehearings denied November 12, 1982 in case nos. 63923 and 63999 —
in case nos. 63923 and 63999.

*Edwin Marger, Robert O. Davies,* for appellant (case no. 63923).
*Reid W. Kennedy, Sylvia K. Morrow,* for appellant (case no.

63924).

*Robert L. Barr, Jr.,* for appellant (case no. 63999).
*Thomas J. Charron, District Attorney, James T. Martin, Assistant District Attorney,* for appellee.