## 40920. HATTEN v. THE STATE.
(315 SE2d 893)

WELTNER, Justice.

James M. Hatten was convicted of murder and sentenced to life imprisonment for shooting and killing his wife with a handgun.[1]

1. The first three enumerations of error challenge the sufficiency of the evidence. The evidence shows that Hatten is paralyzed from the waist down and confined to a wheelchair. Two weeks before his wife's death, he bought a .25 calibre pistol. On the night in question, Hatten, his wife and a friend drove to an Atlanta nightclub, where they drank alcoholic beverages. After the nightclub closed, they returned to the Hatten home. Mrs. Hatten assisted Hatten from the car into the house, and into the bedroom. Hatten brought the pistol with him, while the friend remained asleep in the car. The evidence shows that Hatten fired two rounds in the bedroom. One projectile struck Mrs. Hatten in the chest, killing her.

Hatten contends he discharged two rounds accidentally while unloading the pistol, and that his wife was in the hallway outside of the bedroom at the time. The forensic evidence indicates that Mrs. Hatten was three feet from the muzzle of the pistol. Blood stains found on the bedclothing were consistent with this indication. The evidence further showed the pistol could be fired only by exerting six pounds of pressure on the trigger.

After the shooting Hatten awakened his friend, who called the police. When the officers arrived, they found Hatten outside of the house. Within arm's reach of Hatten, they later found the pistol and ammunition, which Hatten had placed inside a concrete block. The ammunition was similar to the projectile which was removed from the victim's body.

Hatten argues that the state did not prove the requisite intent to support a murder conviction. In his statement to the police, he said, "I was in bed and she came in hollering, throwing things, raising hell, so I shot her so I could get some sleep. I was trying to sleep. I got up a little while later and found her lying on the floor, and I said, 'Deborah, wake up.' Roger had left and I decided I'd leave, so I tried to make it to my truck, but my wheelchair overturned." The evidence, when viewed in the light most favorable to the prosecution, was suffi-

---

[1] The crime occurred on 12/18/82 and the defendant was convicted on 8/10/83. The motion for new trial was filed on 8/11/83, amended on 12/8/83, and overruled by the trial court on 1/27/84. Following the filing of the notice of appeal, the record was docketed in this court on 4/10/84 and the case was submitted on briefs on 5/4/84.

cient to enable a rational trier of fact to find Hatten guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979).

2. Hatten contends that the trial court erred in denying his motion to suppress evidence seized during a search of his residence and the curtilage. The transcript shows that police officers arrived at the scene at approximately 5:30 a.m., handcuffed Hatten, and then secured the house and surrounding area. Without a warrant, they searched the house and seized items relative to the crime, such as a bloodstained sheet on the bed, a bullet in the bathroom ceiling, and empty cartridge casings found on the bedroom floor. The search continued to the yard, where they found the weapon and ammunition. The examination of the crime scene consumed from three to six hours. Hatten contends that this search is unconstitutional under Mincey v. Arizona, 437 U. S. 385 (98 SC 2408, 57 LE2d 290) (1978).

In Mincey v. Arizona, supra, a four-day search, conducted without a warrant and resulting in the seizure of perhaps 300 objects, was held unconstitutional. The court stated: "[W]hen the police come upon the scene of a homicide they may make a prompt warrantless search of the area to see if there are other victims or if a killer is still on the premises . . . . And the police may seize any evidence that is in plain view during the course of their legitimate emergency activities." 437 U. S. at 392-393.

In *Gilreath v. State*, 247 Ga. 814 (1) (279 SE2d 650) (1981), this court upheld the constitutionality of a warrantless search following the entry into a house in search of the victim, and resulting in the seizure of objects in plain view.

In the present case, we do not believe that this search exceeded constitutional bounds. Upon arrival at the house, the police found a dead body with a bullet wound in her chest, bullet holes in the walls, and an empty container for a .25 calibre pistol. Hatten admitted shooting his wife. He did not reveal the location of the weapon. Under these circumstances, to require that police officers cease their search and to obtain a warrant defies logic and common sense. This case differs from Mincey v. Arizona, supra, in that here the search consumed a few hours, not four days. It is distinguishable from *Gilreath v. State*, supra, in that here the police knew of the homicide before entering the house and searching the curtilage. Given the nature of this search and the surrounding circumstances, we find no error in the denial of Hatten's motion to suppress.

3. Hatten contends that the trial court erred in admitting his statement (set out in Division 1, above).

The officer testified that this statement was made voluntarily, before *any* questioning, and without any threat or promise. Hatten testified that he did not remember giving a statement, and contends

that he was too upset and intimidated by the police to have made any statement freely and voluntarily. Following the Jackson-Denno hearing, the trial court found the statement to be voluntary, and ruled it to be admissible.

"[A] trial court's findings as to factual determinations and credibility relating to the admissibility of a confession will be upheld unless clearly erroneous." *Strickland v. State*, 250 Ga. 624 (2) (300 SE2d 156) (1983). The evidence supports the trial court's ruling. As to any alleged Miranda violations, Hatten's statement appears to be entirely spontaneous, and is therefore admissible. *Stevens v. State*, 247 Ga. 698 (7) (278 SE2d 398) (1981).

4. The trial court did not err in denying Hatten's motion for mistrial based upon the prosecution's statement before the jury. During cross-examination of Hatten, the following colloquy occurred:

"[State]: A horrendous accident has occurrred and your wife is not moving, hasn't moved for a period of time, no sign at all. You don't think that's a time to become begrieved?

"[Hatten]: I was grieved. I was trying to get to the hospital.

"[State]: Okay.

"[Hatten]: And then here comes the officers up there with guns at your head and all that crap like you committed a crime.

"[State]: That's why you're here today, Jim."

Hatten's attorney immediately objected to the last statement by the state and moved for a mistrial. The trial court denied the motion and instructed the jury to disregard the statement, admonishing the state for its improper remark. In view of this corrective instruction to the jury (if, indeed, any was required) the trial court's denial of the motion for mistrial does not constitute an abuse of discretion. See *Hoerner v. State*, 246 Ga. 374 (271 SE2d 458) (1980).

5. During the trial, Hatten's attorney learned that a prospective juror had been excused by the clerk of court, prior to voir dire, because the venireman had said that he never would vote to convict any criminal defendant. The clerk, however, testified that the excusal had been approved by the trial court.

A juror may be found incompetent to serve on the jury panel if the trial court determines that there exists in the mind of the juror prejudice or bias either for or against the accused. OCGA § 15-12-164. Upon such finding, "[t]he trial court may, on its own motion, and in the exercise of sound discretion, excuse an incompetent juror at any time before evidence is given." *Norris v. State*, 250 Ga. 38, 39 (295 SE2d 321) (1982). While the practice here employed is, at the minimum, questionable, and in other circumstances could result in reversal, *Joyner v. State*, 251 Ga. 84 (303 SE2d 106) (1983), it was ultimately the trial judge who ordered the prospective juror excused. We find no reversible error. Further, the recusal and testimony of the

trial court were not required, as the evidence was developed fully by the testimony of the clerk.

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 22, 1984.

*Lee Hawks,* for appellant.

*John T. Strauss, District Attorney, John M. Ott, Assistant District Attorney, Michael J. Bowers, Attorney General, Eddie Snelling, Jr.,* for appellee.