### 69852. THE STATE v. CAMP et al.
(333 SE2d 896)

BEASLEY, Judge.

The State appeals from the trial court's grant of appellees' motion to suppress. The record shows that Detective Starrett received a tip that marijuana could be purchased at a certain mobile home in Douglas County. Around 3:00 a.m., without first obtaining a search warrant, Detective Starrett, along with other officers, went to the mobile home. Detective Starrett went to the door where he was greeted

by David Stockton. Starrett told Stockton that he wanted to buy some marijuana. A price was agreed upon, and Stockton left the living room and went down the hall to a bedroom where he knocked on the door. Starrett watched Stockton at the door, saw the door crack open, and heard conversation between Stockton and someone in the bedroom whom Starrett could not see. Detective Starrett thought he heard something about a bag. Stockton reached inside the door and came back to the living room with a bag of marijuana which he sold to Detective Starrett. Stockton was immediately arrested and taken outside and turned over to one of the other officers present.

Detective Starrett and Officer Wynn then went back into the mobile home and back to the bedroom where Starrett had seen Stockton go to get the marijuana. Starrett knocked once upon the closed bedroom door and then entered followed by Officer Wynn. They found appellees John Terry Camp and Regina Ruth Poole in bed together and arrested them for violation of the Georgia Controlled Substances Act. Detective Starrett saw a baggie on the bed which contained a white powder. He seized the bag. Camp and Poole were then permitted to dress. After appellees finished dressing, the officers led them into the living room and "secured" them upon the couch. The officers then returned to the bedroom and made a systematic search. Officer Wynn searched Poole's purse which he had found on the floor beside the bed. In the purse he found a bag containing white powder, a razor blade, and a straw. These were seized. Detective Starrett testified that the crime lab later identified the white power as amphetamines, but he was not sure which powder from which bag was being identified. In the headboard of the bed, the officers found a bag containing nearly a pound of marijuana. After completing the search of the bedroom, the officers returned to the living room. As they escorted appellees from the home, Officer Wynn looked beneath a cushion on the couch and found another cache of marijuana.

David Stockton pleaded guilty to possessing and selling marijuana, violations of the Georgia Controlled Substances Act. Camp and Poole moved to suppress the evidence seized in the search of the mobile home because the search was made without a search or arrest warrant. The trial court granted the motion to suppress in its entirety holding that the intrusion into the bedroom was both unwarranted and unreasonable.

1. Defendants each filed a motion to suppress evidence, alleging a violation of the federal Fourth Amendment, the state constitutional right against unreasonable searches and seizures (1983 Ga. Const., Art. I, Sec. I, Par. XIII), OCGA §§ 17-5-1 and 17-5-2, and federal and state due process provisions. The court took evidence and heard argument, after which both the state and defendants submitted briefs reciting their respective versions of the facts and documenting their ar-

guments. Defendants posited their positions plainly, repeating nearly verbatim what they stated at the outset of the hearing: "Defendants base their motion to suppress on the Fourth Amendment and the Constitution of the State of Georgia." Their argument cited as authority a number of Georgia and U. S. Supreme Court cases in support of their Fourth Amendment claim. No argument was made in pursuit of the nominal invocation of the Georgia Constitution or of the Code provisions. The Fourth Amendment was the entire focus of the presentation, the state having responded that exigent circumstances authorized the warrantless search. After the two officers testified, the court heard argument and invited briefs, indicating that it would do further research on the Fourth Amendment. Subsequently it issued the order which was appealed to this court. It concluded that the Fourth Amendment had been violated because "exigent circumstances" were not present and that defendants had a "reasonable expectation of privacy" so that the items seized in the bedroom were inadmissible. The court also rejected the application of "the 'search incident to a lawful arrest' exception." As to the baggie with white powder seen on the bed, the court ruled that "plain view" did not authorize seizure because the officer was not "at a place where he is entitled to be" when he saw the baggie.

On appeal, the state claims as error the granting of the motion. Although in its brief it argues in part that the statute, OCGA § 17-5-1, authorizes a search pursuant to lawful arrest "within the person's immediate presence" for certain enumerated purposes, that argument is irrelevent here, which appellees point out.[1] As shown by the development of the case, defendants were not pursuing a claim of violation of statutory rights, nor did the trial court address such an issue. Even if the statute were complied with, if the federal constitutional right involved here was violated, the latter would of course control. Thus the state can take little solace by citing adherence to the state statute.

The same would be true of an application of the state constitution which, when its restrictions are less protective of individual rights than the federal constitution's principles as exposited by the U. S. Supreme Court, must yield to the supreme law of the land. Defendants did not advance the state constitutional claim, nor was such addressed by anyone. So we would consider it as having been abandoned below also. *Kingston v. State*, 127 Ga. App. 660, 661 (2) (194 SE2d 675) (1972); *Cox v. City of Lawrenceville*, 168 Ga. App. 119 (308 SE2d 224) (1983). See *Solesbee v. Balkcom*, 339 U. S. 9, 11 (70 SC

---

[1] Note, however, that two of the statutory purposes are: "(3) *Discovering* or seizing the fruits of the crime for which the person has been arrested; or (4) *Discovering* or seizing any instruments, articles, or things which are being used or which may have been used in the commission of the crime for which the person has been arrested." (Emphasis supplied.)

457, 94 LE 604) (1949). The appellate court corrects errors of law committed by the trial court where proper exception is taken. *Velkey v. Grimes*, 214 Ga. 420 (105 SE2d 224) (1958); *Butler v. State*, 172 Ga. App. 405, 406 (1) (323 SE2d 628) (1984). Thus, whether the state constitutional guarantees were secured in the circumstances of this case we are not prepared to say. Since it was not drawn in question, this is not the proper case for this court to explore that possibility.

Like treatment must be given the statute which, if defendants believed it had been violated, should have been analyzed first. See *Salem College & Academy v. Employment Div.*, 298 Or. 471 (695 P2d 25, 34) (1985). The reason is that if state law was not followed, that would be conclusive and the federal constitutional issue need not be reached. But they dwelt on the Fourth Amendment, the court ruled that the search and seizure did not come within its bounds, and that is all this court has for review. We do not have a situation where we can rule on "separate, adequate, and independent state law grounds." For the difference it makes, see *Caldwell v. Mississippi*, ___ U. S. ___ (53 LW 4743, 4744-4745, Div. II (June 11, 1985)) and cases cited therein, especially *Michigan v. Long*, 463 U. S. 1032, 1037-1044 (I) (103 SC 3469, 77 LE2d 1201) (1983).[2] Thus it is the federal constitution we are applying here and our understanding of it and of the U. S. Supreme Court's and our own appellate courts' construction of it.

2. "In exigent circumstances . . . , police officers are authorized, pursuant to a lawful arrest, to enter upon . . . premises and conduct a reasonable search of the suspects' persons and immediate presence." *Dennis v. State*, 166 Ga. App. 715, 717 (305 SE2d 443) (1983); see OCGA § 17-5-1. "Once lawfully within the house, the officers were authorized to make a search of the entire house for the limited purpose of securing it, i.e., discovering the presence of all occupants and eliminating the possibility of harm to the officers and the destruction of evidence." *Lentile v. State*, 136 Ga. App. 611, 613 (222 SE2d 86) (1975). " 'A police officer is free to use and seize what he sees in plain sight if he is at a place where he is entitled to be. [Cits.]' " *Brewer v. State*, 129 Ga. App. 118, 119 (199 SE2d 109) (1973).

Applying these principles to the present case, we conclude that Detective Starrett, having observed Stockton go to the bedroom door to obtain the marijuana which he sold to Detective Starrett and for which he was arrested, had the right to go to the bedroom to search it. He knew that the marijuana had been obtained from the bedroom, and he had heard voices other than Stockton's in the bedroom. The record shows that he seized a bag containing white powder which lay

---

[2] See also *State v. Kennedy*, 295 Or. 260 (666 P2d 1316) (1983).

on top of the bed. Under the principle set out in *Brewer*, supra, this evidence in plain view was thus properly seized and is therefore admissible. In finding that Detective Starrett had no right to be in the bedroom and that the bag on the bed was thus inadmissible, the trial court erred.

With regard to the search of the pocketbook and headboard, both were in the immediate control of the defendant occupants of the bed at the time of their arrest. The pocketbook was beside the bed, on the same side on which the female lay, and at the time of her arrest was within her grasp. The drugs in the headboard were reachable by both. Applying the reasoning of *McDowell v. State*, 172 Ga. App. 643 (1) (324 SE2d 211) (1984), this is a valid search incident to valid arrests, under the Fourth Amendment. *McDowell* involved an automobile search: " 'The decisive factor is whether the arrestee was, at the time of his *arrest*, a 'recent occupant' of the automobile, not whether the automobile and its contents were in his immediate control at the time of the *search*.' *State v. Hopkins*, 163 Ga. App. 141, 143 (293 SE2d 529) (1982)." Id. at 643. This is because the search may encompass the area within the immediate control of the arrestee, partly to prevent the concealment or destruction of evidence. *Chimel v. California*, 395 U. S. 752 (89 SC 2034, 23 LE2d 685) (1969). See discussion in *State v. Hopkins*, 163 Ga. App. 141 (293 SE2d 529) (1982). A "prompt warrantless search of the area" is authorized. See *Hatten v. State*, 253 Ga. 24 (315 SE2d 893) (1984). Although *McDowell* and *Hopkins* are automobile searches, *Hatten* is not, but rather involves the search of a residence and curtilage following arrest for homicide. In addition to seizing what was in plain view, which covers the bag containing white powder in this case, the Georgia Supreme Court in *Hatten* found no federal constitutional violation when the police searched the premises outside and found a pistol and ammunition inside a concrete block which had been "[w]ithin arm's reach of Hatten" earlier when he was arrested. The same situation obtains here with the contraband concealed within close proximity to defendants.

In addition to the search incident to arrest basis in *Hatten*, it appears that the court also considered the exigent circumstances. Although it did not use this term, it described the scenario and concluded: "Under these circumstances, to require that police officers cease their search and to [sic] obtain a warrant defies logic and common sense . . . Given the nature of this search and the surrounding circumstances, we find no error in the denial of Hatten's motion to suppress." Id. at 25.

The circumstances here are comparable if not even more compelling. A substantial sale of marijuana had just been made to a stranger (the police officer) by a visitor to the residence who admitted the stranger into the mobile home in the middle of the night as though it

were routine. The seller had negotiated the sale after they "dickered about the price for a while" and obtained the marijuana from persons in a bedroom not more than twenty-five feet down the hall who supplied it to him upon simple request without his even going inside. The officer heard the voices of the people in the bedroom. The ease with which the police officer purchased the drug made it likely that there was more of the contraband present and that this was not the only or last bag. When the police went to arrest the persons who were the source of the purchased marijuana, a bag with white powder was right on the bed with them, confirming the belief that what had been purchased was indeed not the total supply of controlled substances in that place. It was about 3:00 a.m., and the occupants at the time the police arrived did not constitute a family but were three unmarried people, so the police did not know how many others might come. The police did not conduct a general exploratory search of the whole residence[3] but only of the immediate area from which had emanated the drug sale.

The nature and gravity of the underlying offense is "an important factor to be considered when determining whether any exigency exists . . ." in the context of the Fourth Amendment's prohibition on unreasonable searches and seizures. *Welsh v. Wisconsin*, ___ U. S. ___ (52 LW 4581, 4585, May 15, 1984). Although that case focused on the validity of a warrantless arrest, rather than on the authorization for a warrantless search, it would seem that this "common sense approach" would apply here as well.

Defendants had been arrested on drug charges after a sale had been made by their colleague and suspected white powder had been seen in their presence; these were not minor offenses. In addition, entry into the house had not required a warrant, as the defendants' colleague had invited the officer into the trailer for the purpose of transacting the illegal sale of drugs. And as we have said, entry into the bedroom was permitted.

Considering all of the circumstances here, we would not require that the premises be sealed up tight and watchmen be put at the doors and windows so no one who might be coming to buy drugs the same way the policeman did could get in and remove contraband, and that a magistrate be found at 3:00 a.m. to issue a search warrant.

As to the marijuana stashed under the cushion where one of the defendants was sitting after arrested, while it may not have been in the immediate vicinity of Poole or Camp when arrested, the police having moved the persons in custody to this spot, it was the location of seller Stockton's arrest. Moreover, it was in the same premises, so

---

[3] As was disapproved in *Lentile v. State*, 136 Ga. App. 611, 612 (1) (222 SE2d 86) (1975).

that it would seem to come within the rationale of *Hatten*. In addition, there was a reasonable and rational articulated basis for the alert and minimally intrusive lifting of the cushion. There was no general search of the entire premises, or upsetting of personal belongings or emptying of drawers or destruction of order. A fair amount of marijuana had been purchased and several bags found, suspected powder had been discovered, and prior experience had taught the officer that users of marijuana often kept it under the sofa or in the cushions.

Based on all of the picture we have been given, we conclude that the "special protection offered the individual in his home by the Fourth Amendment"[4] was not violated.

*Judgment reversed. Banke, C. J., Deen, P. J., McMurray, P. J., Birdsong, P. J., and Carley, J., concur. Sognier, Pope, and Benham, JJ., dissent.*

Pope, Judge, dissenting.

I must respectfully dissent in part. I agree only with the majority opinion that the white powder in plain view on the headboard should be admitted into evidence. I cannot agree that the remainder of the contraband in question was lawfully seized. The majority relies primarily upon two cases: *McDowell v. State*, 172 Ga. App. 643 (1) (324 SE2d 211) (1984), and *Hatten v. State*, 253 Ga. 24 (315 SE2d 893) (1984). Neither of these cases applies to the facts of the instant case. *McDowell* was an *automobile* search case. The rule in *McDowell* derived from *State v. Hopkins*, 163 Ga. App. 141 (293 SE2d 529) (1982), which, in turn, relied upon *New York v. Belton*, 453 U. S. 454 (101 SC 2860, 69 LE2d 768) (1981). " 'While the *Chimel* case [395 U. S. 752 (89 SC 2034, 23 LE2d 685) (1969)] established that a search incident to an arrest may not stray beyond the area within the immediate control of the arrestee, courts have found no workable definition of "the area within the immediate control of the arrestee" when that area arguably includes the interior of an automobile and the arrestee is its *recent occupant . . .* In order to establish the workable rule *this category of cases* requires, . . . we hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, *search the passenger compartment of that automobile.* [Cit.]' " *State v. Hopkins*, supra at 143. The quoted language clearly shows that the rule relied upon by the majority applies only to automobile searches due to the inherent exigencies arising from the mobility of the automobile. Such exigencies do not exist in regard to one's residence. I cannot agree that *Hatten v. State*, supra, stands for the proposition that the rule in

---

[4] *Welsh*, supra at 4585.

automobile cases such as *McDowell* may be extended to one's residence. In *Hatten* the Georgia Supreme Court applied the rule set out in *Mincey v. Arizona*, 437 U. S. 385 (98 SC 2408, 57 LE2d 290) (1978): " '(W)hen the police come upon the scene of a homicide they may make a prompt warrantless search of the area to see if there are other victims or if a killer is still on the premises. . . . And the police may seize any evidence that is in plain view during the course of their legitimate emergency activities.' [Cit.]" *Hatten v. State,* supra at 25. Thus, *Hatten,* relying on *Mincey,* recognizes that certain exigencies exist when dealing with *homicide,* and gives police the latitude necessary to deal with those exigencies; that is, to search for other possible victims or killers, and while so doing, police are permitted to seize evidence discovered *in plain view.* However, the central purpose of the permissible search is not the discovery of evidence, but rather to ensure the safety of officers and citizens present. Similarly, the central purpose in allowing the search of the passenger compartment of an automobile is not the discovery of evidence, but rather to ensure the safety of those present and to prevent possible destruction of evidence. An automobile is infinitely easier to get into to remove something than is a house.

My point is that the law has long recognized that exigencies exist which dictate that police make prompt warrantless searches, and that such searches are not unreasonable and thus offensive under the Fourth Amendment. However, such searches have always been limited. The majority opinion leaves no limits. Exigency would exist whenever a valid warrantless arrest occurred, and a thorough search of the premises allowed. This far exceeds the recognized exceptions which permit warrantless searches.

"In exigent circumstances . . . , police officers are authorized, pursuant to a lawful arrest, to enter upon . . . premises and conduct a reasonable search of the suspects' persons and immediate presence." *Dennis v. State,* 166 Ga. App. 715, 717 (305 SE2d 443) (1983). "Once lawfully within the house, the officers were authorized to make a search of the entire house for the limited purpose of securing it, i.e., discovering the presence of all occupants and eliminating the possibility of harm to the officers and the destruction of evidence." *Lentile v. State,* 136 Ga. App. 611, 613 (222 SE2d 86) (1975).

Both Detective Starrett and Officer Wynn testified that they were not searching for weapons when they searched the bedroom. At the time he searched the purse, Officer Wynn testified that Poole and Camp had already been moved to the living room. Likewise, when the cache of marijuana was discovered inside the closed headboard, the suspects had already been safely secured in the living room. At that point Detective Starrett and Officer Wynn "were not authorized to open up closed containers or otherwise discover contraband which

was not in plain view, and this is true whether they were conducting the warrantless search incident to the lawful arrest of the occupants or under the exigencies of the situation . . . The 'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges. The limits on the doctrine are implicit in the statement of its rationale. The first of those is that plain view *alone* is never enough to justify the warrantless seizure of evidence. This is simply a corollary of the familiar principle . . . that no amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances' . . . The second limitation is that the discovery of evidence in plain view must be inadvertent. After it was determined that all of the occupants of the house . . . were in custody, no exigency existed which would justify a general search of the entire house. At that point, the officers could, and should, have procured a search warrant to discover whatever contraband or other evidence may have been on the premises, not in plain view." (Citations and punctuation omitted.) *Lentile v. State*, supra at 614-15. In my opinion, the trial court did not err in excluding the contraband discovered in the closed headboard or under the cushion.

I am authorized to state that Judge Sognier and Judge Benham join in this dissent.

DECIDED JULY 15, 1985 —
REHEARING DENIED JULY 31, 1985 — 

*Frank C. Winn, District Attorney, Richard S. Thompson, Assistant District Attorney*, for appellant.
*Wallace C. Clayton*, for appellees.