## 50305. INGRAM v. THE STATE.

MARSHALL, Judge.

Three defendants (Bradley, Riggins and Ingram) were tried jointly for murder, armed robbery and aggravated assault. The jury returned a verdict against Bradley for armed robbery and aggravated assault (no appeal) and against Riggins and Ingram for robbery by intimidation. The trial judge imposed a sentence of ten years each for Riggins (50306), and Ingram (50305). This opinion deals solely with the appeal of Ingram. *Held:*

1. The state has filed a motion to dismiss Ingram's appeal for failure of Ingram to timely file the transcript of the proceedings in the trial below. Ingram was convicted of robbery by intimidation on July 11, 1974, and sentenced to ten years in the penitentiary on July 12th. Notice of appeal was filed on August 1, 1974. The transcript of evidence was not filed until December, 1974.

In the trial court the state moved to dismiss the appeal in accordance with Rule 10 (c) of the Court of Appeals, on the ground that the transcript had not been filed within the thirty-day filing period, as required under the Appellate Practice Act of 1965, p. 26 (Code Ann. § 6-806). On September 18, Ingram applied for extension of time to file the transcript nunc pro tunc. The trial court ruled, as follows: "In accordance with the rule laid down in *McAuliffe vs. Rutledge,* 231 Ga. 745, that 'An attorney who through negligence, ignorance or misinterpretation of the law fails to perform routine duties resulting in a dismissal of his client's appeal, thereby denying such client a right of review after conviction cannot be said to be rendering effective assistance' it is the finding of the Court that Defendant's attorney did not render defendant effective assistance of Counsel and the motion of the State of Georgia to dismiss Defendant's appeal is hereby denied and Defendant's application for an extension of time for filing the Transcript of Evidence is hereby granted . . ."

In spite of the fact that the rules of appellate practice, as set forth in Code Ann. §§ 6-804 and 6-806, have not been complied with in this case, we are nevertheless required to follow the holding in *McAuliffe v. Rutledge,* 231 Ga. 745 (204 SE2d 141), as did the trial judge, and ignore the rules of appellate practice where the appeal involves a criminal defendant who has been ineffectively represented by counsel at trial. See also *Cunningham v. State,* 232 Ga. 416 (207 SE2d 48). In doing so, we echo the sentiment expressed in *Mingo v. State,* 133 Ga. App. 385 (210 SE2d 835), and in *Denson v. State,* 134 Ga. App. 876. It is apparent that *Blackstone v. State,* 131 Ga. App. 666 (206 SE2d 553), overlooked in *McAuliffe* and *Mingo,* is implicitly overruled by *McAuliffe.*

2. Ingram enumerates eight errors, the fifth of which involves the question of whether the facts were sufficient to allow a charge of conspiracy when Ingram was not indicted or charged with same.

The evidence at trial showed that Ingram accompanied four other males to the residence of two victims for the ostensible purpose of purchasing marijuana. Ingram drove the car. During the course of the transaction one of the males pulled out a large pistol,

ordered the two victims to lie down on the floor and began beating them with the pistol. Another of the males taped the victims' legs together and another hit one of the victims over the head with a large wine bottle. The males then took stereo equipment and other personal effects from the victims and left in Ingram's car. One of the victims later died as a result of injuries received in the beating. Ingram, in a statement to the police, admitted his presence during the beating and robbery and that he helped dispose of some of the stolen goods, but his defense was that he just happened to be there and that there was no evidence that he actively or voluntarily participated in the crimes.

This evidence is sufficient to support a charge of conspiracy. A conspiracy may be proved and charged though not alleged in the indictment. *Bruster v. State,* 228 Ga. 651 (3) (187 SE2d 297) and *Scott v. State,* 229 Ga. 541 (192 SE2d 367).

"Conspiracy consists in a corrupt agreement between two or more persons to do an unlawful act, the existence of which agreement may be established by direct proof, *or by inference, as a deduction from acts and conduct,* which discloses a common design on their part to act together for the accomplishment of the unlawful purpose." *Fincher v. State,* 211 Ga. 89 (4) (84 SE2d 76) (emphasis supplied); *Kennemore v. State,* 222 Ga. 362 (2) (149 SE2d 791).

3. The first enumeration of error contends that the trial judge erred in denying Ingram's motion to sever on the ground that conspiracy was not a proper theory of the case and that Ingram anticipated the attempted introduction by the prosecutor of a statement of one of the co-defendants. "Ruling on a motion for severance is a matter committed to the sound discretion of the trial court and in order to obtain a reversal on a severance argument, an appellant must carry the difficult burden of showing that the trial court abused its discretion in denying the severance." United States v. Norman Clark, 480 F2d 1249; see Opper v. United States, 348 U. S. 84 (75 SC 158, 99 LE2d 101). Here Ingram has not shown an antagonistic defense. Since it is a matter of discretion, and the appellant has not shown prejudice, this enumeration is without merit.

4. Ingram complains in enumeration of error 2 that the trial court erred in admitting an incriminating statement which Ingram made to police on the grounds that: (1) at least part of the statement was made while Ingram was under suspicion and in custody and before he was warned of his Miranda rights; (2) he was not advised of his right to stop the questioning at any point during the interrogation. The evidence at both the Jackson v. Denno hearing and before the jury showed that two police detectives called on Ingram at his house to find out some information concerning one Harvey King, a suspect in the case. Ingram stated that he knew King and had gone to Huntsville, Alabama with him recently. The detectives then asked Ingram to accompany them to headquarters to give them more information concerning King. He went voluntarily and was not placed under arrest. At police headquarters Ingram asked why they were looking for King. The policeman responded "I told him, I have a warrant for Harvey King for murder and armed robbery. At this point he became extremely nervous. He started twisting his hands and began sweating. And I asked him, I said, do you know anything about this? and he said yes . . ." At this point the policeman interrupted Ingram and advised him of his rights under Miranda v. Arizona, 384 U. S. 436 (86 SC 1602, 16 LE2d 694). The detective's testimony was that they did not suspect Ingram until this time and that their sole purpose in talking to him was to discover the whereabouts of King. "The mandates of the Miranda case apply to in-custody interrogation, not to pre-custodial questioning, as here." *Kemp v. State,* 227 Ga. 251, 252 (179 SE2d 920). See also *Estes v. State,* 232 Ga. 703 (4a) (208 SE2d 806); *Jones v. State,* 127 Ga. App. 137 (4) (193 SE2d 38); *Boorstine v. State,* 126 Ga. App. 90 (1) (190 SE2d 83); *Ingle v. State,* 123 Ga. App. 56 (179 SE2d 305).

That the advice given did not include advice that Ingram could stop the questioning at any time during the interrogation and remain silent or request the presence of an attorney is not a requirement under the Miranda case. *Williams v. State,* 132 Ga. App. 152 (4) (207 SE2d 651). The statement made by Ingram was by a preponderance of the evidence, otherwise voluntarily made. Lego v.

Twomey, 404 U. S. 477 (92 SC 619, 30 LE2d 618); *Smith v. State,* 218 Ga. 216 (5) (126 SE2d 789); *Brown v. State,* 203 Ga. 218 (2) (46 SE2d 160).

5. In the third enumeration of error, Ingram complains that the trial court erred in failing to exclude prosecution exhibit number four (a stereo speaker) because of lack of identification, and that without this evidence there is insufficient proof of robbery by intimidation. Even if the identification of the speaker by the witness were not proven beyond a reasonable doubt (*Jones v. State,* 106 Ga. App. 614 (1) (127 SE2d 855); *Gober v. State,* 75 Ga. App. 153 (42 SE2d 506)), Ingram could not have been harmed thereby because there was sufficient evidence to otherwise establish appellant's complicity in the offense of robbery by intimidation.

6. The fourth enumeration of error contends that because the surviving witness could not positively identify Ingram as a participant in the crime there remained no corroboration to Ingram's incriminating statement and the evidence was therefore insufficient to prove his guilt. In addition to the corpus delicti, there was another witness who identified Ingram as being one of the persons who presented the stereo equipment for sale to him after the crime. There was sufficient corroboration.

7. The sixth enumeration of error complains that the trial judge left his position of impartiality during the trial, which resulted in an unfair trial for Ingram. We have read the transcript and concluded that, even though the trial judge interrupted and argued with defense counsel, cross examined and led some witnesses, and provided guidance to the prosecutor in presenting evidence, he did not leave his position of impartiality to the extent that an unfair trial resulted. *Wilson v. State,* 229 Ga. 224 (2) (190 SE2d 78). Cf. *Dunn v. State,* 123 Ga. App. 607 (182 SE2d 317). Code of Judicial Conduct, Canon 3 A (3), 231 Ga. A-3.

8. Ingram's seventh enumeration of error is that the trial court erred in considering rumors and innuendoes during the sentencing phase of the trial. Specifically, during the sentencing phase the trial judge heard argument from the appellant's counsel and then remarked "But I can't overlook the fact that the Sheriff's

deputies constantly reported that their [the appellant's] attitude during this trial wasn't that good, said it was one of mockery and defiance and was not commendable at all. The deputies reported this on them constantly, all three of them. Even this young man here in the green coat [Riggins] had some remarks to make to one of the ladies in the District Attorney's office down there about, you can go with me any time, baby, if you want to — or something to that effect . . . and so, they are not the lily-white pure people that I think these people who are here with them think they are."

Ga. L. 1974, pp. 352, 357 (Code Ann. § 27-2503), provides in part, that during the sentencing phase, "that only such evidence in aggravation as the State has made known to the defendant prior to his trial shall be admissible." We are aware of no appellate decisions defining the meaning of "evidence" as used in this statute. We do not think that the conduct and attitude of the defendant personally observed by the judge during the trial would come within the restriction of said statute. However, for the judge to rely on information that is not from his own personal observation is improper, and such practice is specifically disapproved. Nevertheless, there is a presumption, in the absence of a strong showing to the contrary, that the trial judge, when sitting without a jury, separates the legal evidence from facts not properly in evidence in reaching his decision (*McBryde v. State,* 34 Ga. 202, 204), and for this reason we find no error in this enumeration. See *Jones v. State,* 233 Ga. 662 (3) (212 SE2d 832).

9. Ingram's final enumeration of error was the trial court's failure to sustain the defense's objection to the closing arguments of the prosecutor. Specifically, the remark objected to was: "And how many of them got up and told you what their defense was going to be? Don't you think if they were innocent — [Objection]. . ." And later, the prosecutor remarked, "But they were afraid that they would pin them down early if they got up and made an opening statement. Now, I am going to submit to you that if they were truly innocent, that wouldn't have happened." Ingram's objection to these remarks by the prosecutor at the trial was that it was improper for the

district attorney to comment on the defense attorney's failure to make an opening statement. We are aware of no cases wherein comment on the mere failure of the defense attorney to disclose their theory of defense at the outset of the trial results in prejudice to the accused. The comments come close to but do not amount to a comment on the failure of Ingram to testify, which would constitute reversible error under Griffin v. California, 380 U. S. 609 (85 SC 1229, 14 LE2d 106); *Salisbury v. State,* 221 Ga. 718 (5) (146 SE2d 776); *Spann v. State,* 126 Ga. App. 370 (190 SE2d 924); *White v. State,* 118 Ga. App. 515 (2) (164 SE2d 158). However, in this case it is clear that the prosecutor's comment was directed to the failure to make an opening statement and there was "no direct reference to the failure [on the part] of the defendant to testify or make an unsworn statement." *Mitchell v. State,* 226 Ga. 450, 455 (4) (175 SE2d 545).

*Judgment affirmed. Bell, C. J., and Webb, J., concur.*

ARGUED MARCH 3, 1975 — DECIDED MAY 12, 1975 — REHEARING DENIED JUNE 4, 1975 — ▮▮▮▮▮▮▮▮

*Vincent P. McCauley, T. Edward Tante, IV,* for appellant.

*E. Mullins Whisnant, District Attorney, J. Gray Conger, Assistant District Attorney,* for appellee.