## 60634. MONTGOMERY v. THE STATE.
## 60882. LEWIS v. THE STATE.

BIRDSONG, Judge.
At a joint trial, Carlton Lewis, Malcolm Montgomery, Cornelius Bridges, Luther Winters, and Harry Porter were tried for armed

robbery, theft of an auto, and aggravated assault. Each was convicted as charged except for Harry Porter who was acquitted of all charges. Those convicted each received a sentence of life imprisonment for the armed robbery and consecutive sentences of ten and four years for the aggravated assault and theft, respectively. Lewis has filed a separate appeal which has been consolidated with the appeal of the defendant Montgomery.

The facts of this bizarre case show the following: Montgomery and Winters are admitted homosexuals and transvestites. They lived in Montgomery, Alabama, where they were close acquaintances with Cornelius Bridges and one Johnnie Smith. The four men decided to go to Augusta, Georgia, for purposes of obtaining work or to "hustle" during the Masters golf weekend. A person named "Slim" offered to drive the "girls" (Montgomery and Winters) from Alabama to Augusta but refused to drive the "men" (Smith and Bridges). Montgomery and Winters each routinely dressed as women. Plans were made for Smith and Bridges to travel by bus and for the four men to meet at the bus station in Augusta. Winters and Montgomery met Smith and Bridges at the bus station as planned but a friend, appellant Carlton Lewis, had accompanied the "men." The five men sought inexpensive accommodations and took a taxi to a rooming house. The landlady was asked about another transvestite (one Bobbie) who lived in Augusta and was known to Winters and Montgomery. The landlady mistakenly referred Winters and Montgomery to the wrong transvestite, Porter. Porter established a friendship with the five men (Smith, Lewis, Bridges, Winters, and Montgomery). The first day in Augusta, Porter invited the five men to his (Porter's) grandmother's house for a meal and all watched television. The next day, the three "girls" (Porter, Winters and Montgomery) went window shopping. On the way back to Porter's house, they observed a blue-colored automobile driving by on the street. The evidence is in conflict at this point. The driver of the auto testified that as he pulled up to a stop light, three persons dressed as women opened the door of his car, displayed a silver-handled gun, and forced him to drive to an apartment house. Porter, Montgomery, and Winters all testified that the driver voluntarily stopped, offered them a ride and thereafter voluntarily engaged in an act of "sexual intercourse" with Winters. Afterwards, the victim either voluntarily or involuntarily, depending upon which version is accepted, was taken to the second floor in the boarding house, to one of the two rooms rented by the five men from Alabama. The victim identified Montgomery, Bridges, Winters and Porter as well as a fifth man as being in the room at one time or another. There is fairly common agreement that Montgomery entered into the room occupied by

Winters and the victim displaying a gun belonging to Smith. The victim was required to remove his trousers and shake them upside down, thereby disgorging the contents of his pockets. Some $300 plus car keys were taken. After the robbery was completed, Smith and Montgomery left to go to Porter's house to obtain some clothing belonging to Montgomery. After they left, the others placed a pillow case over the victim's head and attempted to tie the pillow case closed around his neck. When the victim struggled, the evidence, though disputed, shows that Lewis placed the pistol against the victim's head and fired one bullet into his brain. Fortunately, the shot did not prove to be fatal. After the victim was shot, the three remaining defendants (Lewis, Bridges, and Winters) exited the room and met Smith and Montgomery returning with Montgomery's clothes. All five men then ran down the stairs and left Augusta in the victim's car. Except for the victim's testimony, all other evidence placed the defendant Porter on the street below when the shooting occurred and indicated that Porter was not a part of the robbery, assault or theft of the victim's auto. At the time of this trial, Smith was incarcerated in Alabama.

The appellant Lewis testified that he was on the street at the time of the shooting and upon hearing the gunshot, ran up to the room to see if everything was all right. When he saw the wounded man, Lewis became frightened, picked up the victim's car keys from a table and fled. All the rest of the defendants followed him and together all left in the victim's car.

Bridges and Winters controverted Lewis' version. Both testified that they were in the room and saw Lewis fire the bullet into the victim's head. But appellants Montgomery and Winters contended at trial that they were coerced into participating in the robbery and theft of the victim's auto and denied that they willingly took part in the shooting. Both Winters and Montgomery were represented by a single appointed counsel. Lewis was represented by separate counsel. Lewis bases his appeal on the sole enumeration of error that the trial court denied Lewis a fair trial by refusing a severance of the trial of the parties. Montgomery, represented on appeal by a counsel different from counsel at trial, complains in his sole argued enumeration of error that he was denied due process and suffered inadequate representation by being represented by the same counsel as Winters because there were asserted conflicts in the defenses offered by Winters and Montgomery. *Held:*

1. We will first consider the trial court's denial of Lewis' motion to sever his trial from that of the other defendants. We are constrained to observe that there are two parties to a criminal trial, the state and the defendant(s). It is beyond argument that the object

of all legal investigations (trials) is the ascertainment of truth. Code Ann. § 38-101. Thus it is this high goal that must govern and color all evidentiary and procedural rulings by a trial court. The trial court must weigh in balance the right of the state as society's representative to obtain the truth in the purest and simplest form against the right of a defendant to a trial as free as possible from improper influences. In a case such as the present one, where the same witnesses, the same evidence, and the same charges would be used against all five defendants thus effecting judicial economy in the use of physical facilities, time of witnesses, jurors, and court personnel, the trial court must consider these efficiencies against the possible conflicting interests of joint or multiple defendants. We also observe a corollary concept. A public trial tends to ensure the truth by forcing those who testify to relate their memories without embellishment for fear that there may be those in attendance who could call the testimony into question if not truthful. As one party to the trial, the state is entitled to require common witnesses, both those charged and observers of the charged acts, to present their version of the occurrences in the presence of each other, thereby minimizing witness bias or the possibility of each defendant singly shifting blame to other absent defendants without opportunity of searching inquiry into the truth. Naturally where the prejudice to a defendant of jointly presented evidence outweighs the advantages gained by a joint or common trial, the trial court in its discretion can and should allow the severance to eliminate the attenuation of defense or prejudice.

The appellant Lewis complains for a variety of reasons the denial of his motion for severance. He argues that allowing each of his co-defendants, and especially Bridges and Winters, to testify that Lewis was the "trigger man" when Lewis emphatically denied that status, rendered the defenses antagonistic and severable. Additionally, Lewis claimed to be "straight" and not involved in homosexual activity. Testimony that Winters, Porter and Montgomery were transvestites, dressed as women and that all the other defendants were admitted homosexuals, also was prejudicial at a joint trial to one who suffered from none of these proclivities. Lewis also argues that the evidence of his participation in the robbery and assault is at best minimal and depends entirely upon the testimony of the co-defendants. Yet because the co-defendants freely admitted the robbery and shooting, their admitted participation would tend to inculpate Lewis vicariously at a common trial.

All of these arguments ignore the legal fact that the theory of the state included a conspiracy to commit armed robbery. Thus each of the acts and statements of each of the participants in the criminal enterprise was the same as if Lewis had done the act or made the

statement himself. Thus, whether such evidence was admitted at a severed trial or at a joint trial, the effect and impact legally is the same.

A motion for severance is a matter committed to the sound discretion of the trial court. *Ingram v. State,* 134 Ga. App. 935 (216 SE2d 608). The ruling of the trial court is subject to reversal only for an abuse of that discretion. *Baker v. State,* 238 Ga. 389 (233 SE2d 347); *Mathis v. State,* 231 Ga. 401 (202 SE2d 73); *Todd v. State,* 143 Ga. App. 619 (239 SE2d 188). In weighing for an abuse of discretion, the appellate court must satisfy itself that the appellant has suffered prejudice of a substantial nature. *Cain v. State,* 235 Ga. 128 (218 SE2d 856); *Carroll v. State,* 147 Ga. App. 332 (248 SE2d 702). The burden is on appellant to make a clear showing of prejudice, *Cain,* supra; that the prejudice was harmful, *Todd,* supra; and that the harm could have been avoided by a separate trial. *Moore v. State,* 129 Ga. App. 612 (1) (200 SE2d 320).

Some of the considerations to be evaluated in the exercise of discretion is whether the multiplicity of defendants will cause confusion of evidence or principles of law as to each defendant; whether the evidence admissible against one might be considered erroneously against another; and whether there may be antagonistic defenses. *Cain v. State,* supra. Applying these principles, we conclude that in spite of the confusion caused by the interchange of male and female names in regard to the three transvestite defendants, the evidence as to the basic acts of robbery, theft of the auto and aggravated assault was not in serious dispute. Moreover, in view of the conspiracy theory advanced by the state, in legal result it made no difference whether the jury believed Lewis fired the gun or someone else did; and at worst, only a conflict existed, the resolution of which could work no improper prejudice to any of the defendants so long as the state established the existence of a joint criminal enterprise. Lastly, there was no danger that any of the evidence admissible against one defendant might be erroneously considered against another defendant. All the evidence was admissible against all the defendants under the conspiracy theory. *Burns v. State,* 191 Ga. 60, 73 (11 SE2d 350); *Floyd v. State,* 143 Ga. 286 (84 SE 971).

Lastly, we consider the possible existence of prejudice. If there was no prejudice in the admission of evidence as to any defendant and no undue confusion caused by the admission of the evidence, the only other areas of prejudice could be in the verdict and sentence. Lewis cannot successfully argue prejudice in this regard. For whether the jury and court believed Lewis fired the gun or someone else did, the jury and the court found each defendant equally culpable as a principal, as authorized by the law. Each defendant received the

same verdicts of guilty (except Porter) and the same sentences as the others. We are satisfied that the trial court did not err in denying Lewis' motion for severance of Lewis' trial from the other defendants.

2. In the appeal by appellant Montgomery, the only enumeration of error pertains to inadequate representation because of conflicts of the attorney-client relationship and conflicts of defenses.

We are constrained to conclude, after a careful review of the evidence that Winters and Montgomery did not present inconsistent defenses. Each testified that in effect they considered themselves as the subordinate partner in a homosexual relationship. They were subject to the direction and advice of their male consort. Montgomery considered Bridges to be the head of the relationship and Winters was responsive to Smith. It is fairly apparent that as a trial tactic, both Winters and Montgomery went to great length to establish their "feminine" subordination manifested by their wearing of female clothing, allowing the men (Smith and Bridges) to conduct all the business (i. e., arrange transportation, buy tickets, rent a room, etc.) They made efforts to establish that all they wanted to do (if their story is believed) was to pick up a little money by engaging in prostitution. The ultimate act of armed robbery (the gun furnished by Smith) was forced upon Montgomery by Bridges. The shooting was by a male stranger to the two sets of lovers (Lewis) and Lewis stole the car. Each testified that they were frightened by the "men" and considered the men criminals who would harm them. Both Winters and Montgomery supported each other in this version of the events. Throughout, the testimony of Montgomery and Winters was consistent and supportive.

In order to establish a constitutional violation of right to effective assistance of counsel in a noncapital case (*Fleming v. State,* 246 Ga. 90 (270 SE2d 185)), a defendant who raised no objection at trial (as is true in this case) must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. Until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance. Where the contention is only the possibility of conflict, this is insufficient to impugn a criminal conviction. To demonstrate a violation of the right of effective assistance of counsel, a defendant must establish actual conflict of interest adversely affecting the attorney's performance. Cuyler v. Sullivan, 446 U. S. 335 (100 SC 1708, 64 LE2d 333, 346 (13)).

In this case, Montgomery argues that the dual representation *would* have precluded (not *did* preclude) the attorney from

adequately representing both Montgomery and Winters because he could not effectively negotiate a possible plea to a potentially reduced charge as to one or the other of his clients in exchange for turning state's evidence; he could not in complete candor disclose all matters discussed with one client with the other; freedom to withdraw was not possible because counsel was appointed; there was no unfettered freedom to cross examine each client; nor was there freedom to argue lessened culpability in regard to sentencing (i. e., one client is more guilty or less guilty than the other). Readily apparent from all these arguments is that Montgomery is arguing from assumptions. There is no showing that any of these contingencies actually occurred. Thus, appellant Montgomery has failed to show in the record any actual conflict of interest or how such potential conflict of interest actually impaired the attorney's performance or representation. These contentions raise only the possibility of conflict. A mere possibility of conflict is insufficient to impugn a criminal conviction amply supported by competent evidence. Cuyler v. Sullivan, supra. We find this contention by Montgomery to be without merit.

*Judgments affirmed. Deen, C. J., and Sognier, J., concur.*

ARGUED SEPTEMBER 10, 1980 — DECIDED OCTOBER 16, 1980 — REHEARING DENIED NOVEMBER 14, 1980 IN CASE NO. 60882 —

*Herbert Shafer,* for appellant (case no. 60634).
*L. Daniel Butler,* for appellant (case no. 60882).
*Richard E. Allen, District Attorney,* for appellee.