66589. WATERS v. THE STATE.
66590. RUSHING v. THE STATE.
65591. TILLIS v. THE STATE.
66592, 66593. CARTER v. THE STATE (two cases).

POPE, Judge.
Defendants were indicted for armed robbery and felony murder; the jury found each defendant guilty of armed robbery and voluntary manslaughter. Defendants Waters and brothers Joel Carter and Tommy Carter were sentenced to concurrent terms of 20 years for armed robbery and 20 years for voluntary manslaughter. Defendants Rushing and Julia Darlene (Peanut) Tillis were sentenced to concurrent terms of 20 years for armed robbery and 10 years for voluntary manslaughter. Each defendant appealed separately; however, because defendants were tried together and now raise many of the same issues, we have joined the appeals.

At trial, no evidence was presented on behalf of any defendant. The evidence adduced by the state and viewed in a light most favorable to the verdict shows the following. On the night of June 20, 1981 the defendants, along with Betty Jean Tillis and Brenda Tillis, sisters of defendant Peanut Tillis, were gathered at Peanut's trailer. At some point late in the evening, Waters and Peanut Tillis told the others they were going to get some money and left in Waters' Maverick. The others stayed at the trailer, some talking, others going

to bed. While out, Waters and Peanut Tillis picked up the victim, Thomas Allen Temple. They drove back to the trailer, and while Waters and Temple waited in the car, Peanut Tillis went to the trailer and told the others to get up and to follow Waters and her to Big John's Pond. Waters, Peanut and the victim left for the pond before the others departed. The others (defendants Tommy Carter, Joel Carter, Rushing, and Brenda and Betty Jean Tillis) rode to the pond in Tommy Carter's Cougar, with Tommy Carter driving.

The Maverick arrived at the pond first and stopped near one entrance to the pond. When Tommy Carter and the others arrived in the Cougar, they used the other entrance to the pond and stopped at a light pole some distance from the Maverick. Tommy Carter and Rushing got out and walked to the other car. The victim, Temple, Waters, Peanut Tillis, Tommy Carter, and Rushing stood and talked at the Maverick. Tommy Carter and Rushing then returned to the Cougar and told the others that there was a man (Temple) over there (at the Maverick). Tommy Carter and Rushing then walked back to the Maverick. Waters struck the victim, Temple, on the head with a hammer. Temple then began to run toward the Cougar. Joel Carter got out of the Cougar and collided with Temple, and both fell to the ground. Upon colliding with Temple, Joel Carter cried out, "He got me!" Rushing pulled Joel Carter away from Temple, and Tommy Carter, Joel's brother, picked up a stick and struck Temple four or five times on the head as Temple lay on the ground. Rushing stood above Temple with a stick in his hand. Temple did not get up. Joel Carter, Peanut Tillis, and Waters got into the Maverick and drove away. Tommy Carter brought Temple's wallet back to the Cougar and they began to drive away. Tommy Carter told Rushing, who was driving, to stop and go back because Tommy wanted to get Temple's knife because Tommy's fingerprints were on it. Rushing and Tommy Carter got out of the car and searched for the knife in the area where Temple lay on the ground, alive but not moving, but breathing hard. They found the knife, took it back to the car, and drove away.

All of them met at Jefre's, a restaurant, and got something to eat. After returning to the trailer, the $83 in Temple's wallet was divided among Waters, Rushing, Joel and Tommy Carter and Peanut Tillis. Peanut got $3; the other four defendants got $20 each. Tommy Carter burned Temple's driver's license and power bill. Tommy and Joel Carter, Peanut Tillis, Waters, and Betty Jean and Brenda Tillis then drove to Thunderbolt where the wallet was cast into the water. They then drove to a Krystal to get something else to eat and then returned to the trailer. At no time did anyone in the group make any effort to summon aid for Temple. Thomas Allen Temple suffered several skull fractures and associated head trauma as a result of the attack. He

died sometime in the night after being left on the ground at Big John's Pond.

1. Each of the defendants appeals on the general grounds. From a review of the record, we conclude that the evidence was sufficient to exclude every reasonable hypothesis save defendants' guilt, see *Christopher v. State,* 162 Ga. App. 626 (1) (292 SE2d 478) (1982), and that any rational trier of fact could have found each defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Tommy Carter contends that the trial court made improper remarks to prospective jurors before voir dire began. However, no objection was made at trial to these remarks, and, therefore, we cannot pass upon this alleged error. See *State v. Griffin,* 240 Ga. 470 (241 SE2d 230) (1978); *Sawyer v. State,* 161 Ga. App. 479 (2) (288 SE2d 108) (1982). Objection was made to the court's statement to the jurors that the state had waived the death penalty. We find no error in this statement. The remark was not a misstatement of fact, nor did it in any way intimate to prospective jurors any opinion about the case held by the judge. Nor did the court err in denying defendants' request for additional jury strikes. *Smith v. State,* 154 Ga. App. 258 (2) (267 SE2d 863) (1980). Likewise, we find no error in the trial court's refusal to make available to Tommy Carter a transcript of the grand jury proceedings. *Kesler v. State,* 249 Ga. 462 (10) (291 SE2d 497) (1982). Defendant Rushing argues that the court erred in denying his request to share in the findings of the state-appointed investigator. We do not agree. The appointment of expert witnesses lies within the sound discretion of the trial court. *Moore v. State,* 240 Ga. 807 (5) (243 SE2d 1) (1978). Rushing has shown no prejudice from the denial; indeed, no evidence was adduced at trial by any of the defendants.

3. Defendants Tommy Carter, Rushing, and Tillis contend the trial court erred in not ordering the state to provide the defendants with copies of statements made by the eyewitnesses, Betty Jean and Brenda Tillis. Of course, Brady v. Maryland, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963), dictates that defendants be provided any state's evidence which is materially favorable to the accused. We note that the trial court made an in-camera inspection of the material at the defendants' request and found no material within the purview of Brady. We find no error in that defendants have failed to show "how the statement[s] [were] expected to be material to [the] defense, that is, to have an effect upon the outcome of the case under the standards established by Brady, [United States v. Agurs, 427 U. S. 97 (96 SC 2392, 49 LE2d 342) (1976)], and decisions by the courts of this state. [Cits.]" *Duncan v. State,* 163 Ga. App. 148, 150 (294 SE2d 365) (1982).

Defendants Joel Carter and Waters argue that it was error for the trial court to deny their request for the statements of the co-defendants and witnesses called by the state. We find no error. See *Harvey v. State,* 165 Ga. App. 7 (8) (299 SE2d 61) (1983); *Jefferson v. State,* 159 Ga. App. 740 (2) (285 SE2d 213) (1981). Having disclosed the prior criminal record of its witnesses, the state was under no duty to provide the defense with copies of such records. See *Hill v. State,* 248 Ga. 304 (2) (283 SE2d 252) (1981).

4. Each of the defendants contends the trial court erred in admitting into evidence certain photographs of the victim's wounds, and in particular, photographs of the victim's wounds taken during autopsy. We note that the trial court took care to screen the photographs before admitting them, and excluded duplicitous photographs. See *Ramey v. State,* 250 Ga. 455 (1) (298 SE2d 503) (1983); *Florence v. State,* 243 Ga. 738, 741 (n.1) (256 SE2d 467) (1979). "A photograph which shows mutilation of a victim resulting from the crime against him may, however gruesome, have relevance to the trial of his alleged assailant." *Brown v. State,* 250 Ga. 862, 867 (302 SE2d 347) (1983). Thus, we find no error in admitting those photographs showing the grievous wounds inflicted upon the victim.

As to the autopsy photographs, the Supreme Court in *Brown,* supra at 867, stated: "A photograph which depicts the victim after autopsy incisions are made . . . will not be admissible unless necessary to show some material fact which becomes apparent only because of the autopsy." In *Brown,* the court found the admission of a close-up autopsy photograph of chest wounds offered to show the presence of powder burns was reversible error. The court noted that another photograph of the body taken before autopsy and also in evidence also showed the powder burns in question. In *Sanders v. State,* 251 Ga. 70 (2) (303 SE2d 13) (1983), the court upheld the admission of an autopsy photograph of the victim with the scalp reflected to show the fractured skull, lacerated brain, and the blood hemorrhaging. The victim in *Sanders* was a 2-1/2-month-old baby who had suffered multiple bruises on her face, neck, chest, and abdomen, and whose head was "mushy due to blood and fluid under the skin." *Sanders,* supra at 70. The court held the photograph was necessary to show the cause of death which had become apparent only because of the autopsy.

In the present case, no defendant admitted striking the victim with a hammer, or a stick, or otherwise. Indeed, counsel for Tommy Carter questioned the state's pathologist, Dr. Draffin, about whether the victim's head injuries could have been caused by the victim running into a car bumper; counsel later argued this to the jury. Dr. Draffin testified that his opinion of death was based upon his visual

examination of the victim's skull at the autopsy. The photographs accurately depicted what he saw and revealed skull fractures of much greater extent than would be apparent from viewing the head wounds before autopsy. The autopsy also revealed, and the photographs in question depicted, evidence that the victim's head trauma was more likely caused by a moving object (such as a stick or a hammer) striking a stationary head, rather than showing injury which would suggest a moving head striking a stationary object (such as a car bumper). Before admitting the photographs, the trial court had Dr. Draffin edit the photographs to remove the depiction of the Y-incision in the victim's chest, and as much of the reflected scalp as was possible, and yet retain value to illustrate his testimony. Under these circumstances, we find no error in the admission of the autopsy photographs.

Defendant Tommy Carter further contends the trial court erred in admitting photographs of the victim at the crime scene, and the crime scene in general. We find no merit in this contention. See *Brown,* supra; *Ramey,* supra; *Moses v. State,* 245 Ga. 180 (6) (263 SE2d 916) (1980). Tommy Carter also contends the trial court erred in admitting two sticks found near the body at the scene of the crime as well as photographs of the sticks at the scene. This contention is also without merit. The present case is clearly distinguishable from *Cunningham v. State,* 248 Ga. 835 (4) (286 SE2d 427) (1982). Here, two eyewitnesses, Brenda and Betty Jean Tillis, testified that they saw Tommy Carter pick up a stick and strike the victim. Thus, the sticks were connected by testimony to the crime and were admissible. *Ellis v. State,* 164 Ga. App. 366 (12) (296 SE2d 726) (1982). Further, we find no merit to Tommy Carter's contention that it was error to admit a rough diagram of the crime scene, although it was not drawn to scale. See *Ruff v. State,* 150 Ga. App. 238 (2) (257 SE2d 203) (1979).

5. Each of the defendants alleges error in the trial court's denial of their respective motions to sever. Citing *Cain v. State,* 235 Ga. 128 (218 SE2d 856) (1975), defendants argue that the number of defendants tried together here (5) created confusion in the evidence and law applicable to each defendant, and that there was prejudicial "spill-over" from the testimony applicable against one defendant to the other defendants.

"A motion for severance is a matter committed to the sound discretion of the trial court. The ruling of the trial court is subject to reversal only for an abuse of that discretion. In weighing for an abuse of discretion, the appellate court must satisfy itself that the [defendants have] suffered prejudice of a substantial nature. The burden is on [defendants] to make a clear showing of prejudice; that the prejudice was harmful; and that the harm could have been

avoided by a separate trial." (Citations omitted.) *Montgomery v. State,* 156 Ga. App. 448, 452 (275 SE2d 72) (1980). Defendants have failed to carry the burden of showing prejudicial harm. The primary evidence against all five defendants was adduced from the testimony of the two eyewitnesses, Betty Jean and Brenda Tillis. Each would have been free to testify at separate trials against each defendant. There was no confusion in the testimony about the roles each defendant played in the crime, although each defendant disputes the legal significance of that role. Nor do we see harmful "spill-over." Rushing, Tillis, Joel Carter, and Waters argue that statements made by Joel Carter and Peanut Tillis which were adduced in the testimony of witnesses Dowd and DeLoach were inherently prejudicial and could not be cured by an admonitory charge to the jury. We disagree. No other defendant was mentioned in either of the statements alleged to be prejudicial; the judge properly instructed the jury that statements or testimony against the interest of a particular defendant could be considered only against that defendant.

Tommy Carter complains that the trial court impaired his right to a thorough and sifting cross-examination of Betty Jean Tillis by not allowing him to question her regarding the relationship between her sister, Brenda, and defendant Rushing. We find no error because the information sought was brought out in the cross-examination of Brenda Tillis. We thus find no merit to those enumerations dealing with the trial court's denial of the various motions to sever.

6. We find no error in the trial court's decision to allow the testimony of Paul Eugene Golden, and then to allow the state to adduce testimony showing Golden's prior inconsistent statement. On Monday morning of the on-going trial, the state announced Golden as a witness, newly-discovered on the preceding Friday afternoon. Golden had told the state's investigator of a conversation he had had with defendant Peanut Tillis in which she said that she picked up the victim and had taken him out to roll him, and that the victim had fought back. The state notified counsel for Tillis about Golden later on Friday night, and on Sunday counsel for Tillis interviewed Golden. At that time, Golden recanted his statement made to the investigator on Friday. The state nonetheless insisted on its right to call Golden, and the court granted additional time at lunch to afford defense counsel an opportunity to interview Golden. The court's refusal to grant a further continuance and to overrule the motion for mistrial was not error. See *Lakes v. State,* 244 Ga. 217 (259 SE2d 469) (1979). Nor was it error to allow the state to put Golden on the stand, and then to adduce testimony of his prior inconsistent statement. "[A] prior inconsistent statement of a witness who takes the stand and is subject to cross-examination is admissible as substantive

evidence, and is not limited in value only to impeachment purposes." *Gibbons v. State,* 248 Ga. 858, 862 (286 SE2d 717) (1982). There is no longer any requirement in this state to show either prejudice or surprise before a party is allowed to impeach his own witness. *Davis v. State,* 249 Ga. 309 (3) (290 SE2d 273) (1982); *Wilson v. State,* 235 Ga. 470 (1) (219 SE2d 756) (1975).

7. Defendants' enumerations alleging improper argument during closing by the state are without merit. A review of the record shows the state simply argued reasonable deductions from the evidence presented. Nor do we find any error in the charge as given. Taken as a whole, the charge was a correct statement of the law applicable to the case and was not confusing or misleading. See *Woodard v. State,* 234 Ga. 901 (5) (218 SE2d 629) (1975); *Harper v. State,* 155 Ga. App. 764 (4) (272 SE2d 736) (1980). The contention that the verdict forms were confusing and misleading is likewise without merit. The trial court did not err in refusing to charge the jury on involuntary manslaughter (see *Teal v. State,* 122 Ga. App. 532 (4) (177 SE2d 840) (1970)) or on theft by taking. See *Grant v. State,* 161 Ga. App. 403 (4) (288 SE2d 118) (1982).

8. Finally, defendants argue that the verdicts of guilty as to voluntary manslaughter and armed robbery are inconsistent. We do not agree. "The determinative factor in such cases is whether the acquittal of one charge necessarily includes a finding against a fact that is essential to conviction for the other charge." *Conroy v. State,* 231 Ga. 472, 475 (202 SE2d 398) (1973). Voluntary manslaughter is a lesser included offense of felony murder. *Malone v. State,* 238 Ga. 251 (232 SE2d 907) (1977). "[A]rmed robbery is *not* a lesser included offense of malice murder when a rational trier of fact could find, beyond a reasonable doubt, that the defendant was a party to *both* the armed robbery *and* his co-defendant's murder of the victim, [cit.] . . . ." *Hoerner v. State,* 246 Ga. 374 (1) (271 SE2d 458) (1980). Each defendant here was charged separately with felony murder and armed robbery. From a review of the record, it is clear that there was sufficient evidence for the jury to conclude that there was no legal relationship between the homicide and the armed robbery so as to cause the homicide to be felony murder, but that each defendant was a party to the crime of voluntary manslaughter and the separate crime of armed robbery. Therefore, we find no error in the verdicts or the sentencing.

*Judgments affirmed. Quillian, P. J., and Sognier, J., concur.*

DECIDED NOVEMBER 29, 1983 —
REHEARING DENIED DECEMBER 15, 1983 —

*Leo G. Beckmann, Jr.,* for appellant (case no. 66589).

*William O. Cox, John Calhoun, Walter W. Ballew,* for appellant (case no. 66590).

*Andrew J. Ryan III,* for appellant (case no. 66591).

*William A. Dowell,* for appellant (case no. 66592)

*G. Terry Jackson,* for appellant (case no. 66593).

*Spencer Lawton, Jr., District Attorney, David T. Lock, Assistant District Attorney,* for appellee.