68149. ANGEVINE v. THE STATE.

POPE, Judge.

After a trial by jury, appellant was convicted of pimping by receiving "money . . . from a prostitute, without lawful consideration, knowing it was earned in whole or in part from prostitution." OCGA § 16-6-11 (4).

1. Appellant assigns error to the trial court's denial of her timely motions for directed verdict of acquittal based upon alleged insufficiency of the evidence. "A review of the trial transcript reveals ample evidence from which any rational trier of fact could conclude beyond any reasonable doubt that appellant was guilty of [the offense] charged. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) [(1979)]. It is not for this court to weigh the evidence presented, and a directed verdict of acquittal should be granted only where there is no conflict in the evidence and the verdict of acquittal is mandated as a matter of law. *Paulk v. State*, 161 Ga. App. 89 (289 SE2d 257) [(1982)]. It was not error to deny appellant's motion[s] for directed verdict of acquittal." *Moore v. State*, 165 Ga. App. 65, 66 (299 SE2d 400) (1983).

2. Appellant next enumerates as error the trial court's denial of her motion for directed verdict of acquittal based upon her assertion that the probata did not conform to the allegata. The original accusation charged that appellant "on the 23rd day of February, 1983, did receive money from Teresa Pressley, a prostitute, without lawful consideration, knowing it was earned from prostitution." At trial, all evidence showed that the offense occurred on February 2, 1983. The accusation offered at trial was identical to the original except that it charged that the offense occurred on February 2, 1983. Appellant's motion for directed verdict based upon the variance in time was made

at the close of the State's evidence.

Although the State contends that the accusation was amended prior to trial pursuant to OCGA § 17-7-71 (f), the transcript reveals no compliance with that part of the statute which requires: "A copy of any such amendment shall be served upon the defendant or his counsel and the original filed with the clerk of the court." Nevertheless, we find no error in the trial court's denial of appellant's motion for directed verdict on this issue. "Time was not made a material element of the offense charged and the state proved that the offense occurred within the statute of limitation prior to the return of the indictment." *King v. State*, 155 Ga. App. 418 (1) (271 SE2d 16) (1980). "The variance was not fatal and the trial court did not err in denying appellant's motion." *Smith v. State*, 155 Ga. App. 657, 659 (272 SE2d 522) (1980).

3. Appellant's third and fourth enumerations of error challenge the asserted denial of appellant's motion for new trial. The record, however, is devoid of any such motion or any order denying it. " 'The brief cannot serve in the place of the record or the transcript for the purpose of demonstrating error or for supporting a claim of error.' *Maloy v. Dixon*, 127 Ga. App. 151, 154 (193 SE2d 19) (1972)." *Wyche v. State*, 147 Ga. App. 874 (250 SE2d 581) (1978). Accord *Ezzard v. State*, 155 Ga. App. 594 (1) (271 SE2d 728) (1980). These enumerations are, therefore, without merit. In any event, the arguments raised in support of these enumerations are also those raised in support of enumeration of error number five and will be addressed in Division 4.

4. In her fifth enumeration of error, appellant urges this court to remand her case to the trial court for a hearing on her claim of conflict of interest on the part of her trial counsel, William D. Smith.[1] Essentially, appellant contends that the jury imputed Smith's knowledge of certain activities involving prostitution and other sex offenses allegedly perpetrated by women who worked through appellant's agency to appellant herself. This, according to appellant, provided an element of the offense charged: knowledge that the money received by appellant from or through these women was earned from prostitution.

The State's theory of the case was based upon the contention that appellant's corporation, BCA, Inc., operating under at least seven trade names as escort services, actually served only as a front for prostitution. The State showed that "Casey's," the particular agency in question, advertised under "Massage" and "Escort" in the Yellow Pages, yet no license had been obtained for such businesses. When telephone calls came in to "Casey's," the receptionist, appellant herself about half the time, would arrange to send a woman from the

---

[1] Appellant is represented by different counsel on appeal.

agency's list to the address of the customer. According to State's witnesses (women who had obtained appointments through "Casey's") approximately 80% of the appointments involved performing sexual acts for money. Appellant received a $50 fee for referring the woman to the customer, with anything more than that kept by the woman. Appellant's defense at trial was that she operated an escort or modeling agency and lacked the knowledge that the women sent to the customers were engaging in sex for money.

The facts relative to appellant's claim of Smith's conflict of interest are as follows: Smith drew the legal documents incorporating BCA, Inc. in 1980. Along with appellant and her son, Smith was listed as a member of the initial board of directors of BCA, Inc. After appellant's February 2, 1983 arrest for pimping, Smith represented appellant (BCA, Inc.) in its civil suit against a number of law enforcement agencies and officers in United States District Court in a February 9, 1983 hearing. A perjury charge against Teresa Pressley arose from that hearing. Pressley, a State's witness and the prostitute from whom appellant is charged with taking money on February 2, 1983, was represented by Smith in the unsuccessful defense of the perjury charge. Johnsie Abrahams, a defense witness and receptionist at "Casey's," was also being represented by Smith on a separate charge of pimping arising from her work for appellant. Sharon Quatrone, another who booked appointments through "Casey's," was also being represented by Smith on a separate charge of prostitution.

"In order to establish a constitutional violation of right to effective assistance of counsel in a noncapital case (*Fleming v. State*, 246 Ga. 90 (270 SE2d 185) [(1980)]), a defendant who raised no objection at trial (as is true in this case) must demonstrate that an actual conflict of interest adversely affected his lawyer's performance. Until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance. Where the contention is only the possibility of conflict, this is insufficient to impugn a criminal conviction. To demonstrate a violation of the right of effective assistance of counsel, a defendant must establish actual conflict of interest adversely affecting the attorney's performance. Cuyler v. Sullivan, 446 U. S. 335 (100 SC 1708, 64 LE2d 333, 346 (13)) [(1980)])." *Montgomery v. State*, 156 Ga. App. 448, 453 (275 SE2d 72) (1980). Further, "[a]bsent special circumstances, . . . trial courts may assume either that multiple representation entails no conflict or *that the lawyer and his clients knowingly accept such risk of conflict as may exist.*" (Emphasis supplied.) Cuyler v. Sullivan, 446 U. S. at 346, supra.

We note at the outset that appellant does not claim to have been unaware of Smith's representation of Pressley, Abrahams, or Quatrone. Additionally, there is no indication in the record that Smith's

loyalties were divided or his defense of appellant presented in a less than zealous manner. Cf. Wood v. Georgia, 450 U. S. 261 (101 SC 1097, 67 LE2d 220) (1981). No actual lapse in his active representation of appellant occurred, nor is it asserted. See generally Dukes v. Warden, 406 U. S. 250 (92 SC 1551, 32 LE2d 45) (1972). To the contrary, the transcript shows Smith's vigorous cross-examination of Pressley. Pressley was cross-examined by use of a statement she had given to Smith while he was acting as her attorney. The statement concerned Pressley's account of the February 2, 1983 incident which resulted in the pimping charge against appellant. Inconsistencies between that statement and her testimony at trial formed the basis for Smith's attempt to impeach Pressley on the witness stand.[2]

From a thorough review of the evidence, we find that appellant has failed to show the existence of an actual conflict adversely affecting Smith's performance sufficient to impugn her conviction. "By 'actual conflict' we mean more than the bare possibility that a conflict might have developed." *Hudson v. State*, 250 Ga. 479, 482 (299 SE2d 531) (1983). See also *Barnes v. State*, 160 Ga. App. 232 (286 SE2d 519) (1981). Here, appellant contends that the jury's awareness of Smith's professional association with Pressley, Abrahams, and Quatrone imputed to her knowledge of prostitution in her own business. However, in light of all the evidence, this contention is no more than speculation. Independent evidence of appellant's knowledge that the $50 referral fee was gained from prostitution was presented through the testimony of Pressley and Gayle Buckner, an undercover agent who investigated "Casey's." Her investigation entailed making application, being interviewed, and actually booking appointments through "Casey's," at least one of which resulted in the arrest of her customer for pandering. According to Buckner, in her employment interview she was told by Abrahams, in appellant's presence, that in the course of her work for "Casey's" she might be sent to the home of a regular customer to perform sexual acts in the customer's marital bed.

We believe this to be a case in which appellant was aware, prior to trial, of Smith's representation of others involved in her business, yet she chose to remain silent about any misgivings she might have had then, taking her chances on a favorable outcome at trial. See *Hudson v. State*, supra. While we do not express approval of Smith's representation of appellant and of an adverse witness at trial, we are inclined to view appellant's choice of counsel in this case as a trial

---

[2] Appellant argues that the State recognized Smith's conflict of interest at trial and alerted the trial court to it. However, in actuality, the State raised the issue of conflict only in regard to Smith's use of Pressley's statement, referring to the State's assertion that such use was a breach of Pressley's privilege as Smith's former client since the statement was given in the context of their attorney-client relationship.

tactic, relying in part upon Smith's professional familiarity with aspects of her business. Under the facts of this case, appellant's assertion of Smith's ineffectiveness at trial is unsupported and insufficient to reverse her conviction.

*Judgment affirmed. Banke, P. J., and Benham, J., concur.*

DECIDED JUNE 26, 1984 —
REHEARING DENIED JULY 16, 1984 — 

*Mark J. Kadish, Alan J. Baverman*, for appellant.
*James L. Webb, Solicitor, Donald C. English, Christina A. Craddock, Assistant Solicitors*, for appellee.