A99A0854. GIBSON v. THE STATE.
(516 SE2d 816)

Judge Harold R. Banke.

Willie Gibson appeals his convictions of aggravated assault and possession of a knife during the commission of a crime. He raises issues as to his mental capacity to commit the crimes.

The State's evidence showed that several weeks after Gibson and his wife separated, he broke into her house and stabbed her repeatedly with a knife. Police found a knife with blood stains on it in a drainage area approximately 75 feet away from the truck Gibson had been driving. The knife appeared to have been recently placed there. Upon being questioned by police, Gibson denied having possessed a knife or driven the truck that evening. An officer who had investigated a dispute between Gibson and his wife several weeks earlier testified that the knife found on this occasion was the same as one he had taken from Gibson during the previous incident.

Testimony given by the investigating officer and by Gibson's wife authorized the jury to find that Gibson had consumed alcohol and was intoxicated on the night these crimes were committed. The officer investigating the prior incident testified that Gibson was also intoxicated then. Gibson testified that he quit drinking years ago.

Evidence presented by the defense established that Gibson pre-

viously had been hospitalized in a psychiatric ward and later received out-patient psychiatric treatment based on complaints of auditory hallucinations, depression, and blackouts. Gibson's psychiatrist diagnosed him as paranoid schizophrenic and prescribed Thorazine for the psychosis and Prozac for the depression, but stopped treating him about six months prior to the events in this case. A mental health counselor who was treating Gibson at the time of this incident testified that the preceding day he complained of hearing voices telling him to hurt someone.

Gibson testified that the day before his wife was stabbed, he had taken Thorazine and Prozac in lieu of medication for cancer treatment which he had lost. He further testified that he had a history of blackouts and denied any recollection of assaulting his wife. Evidence of prior threats by Gibson to kill his wife was admitted through the testimony of several witnesses. The wife testified that Gibson had said he would be found to be insane and thereby exonerated.

Prior to trial, a psychologist employed by the forensic services division of Central State Hospital evaluated Gibson. Gibson told him that the last thing he had done prior to the assault on his wife was use solvents to clean a carburetor. The psychologist affirmed that cleaning solvents can make one "woozy or somewhat intoxicated" if inhaled. Based on his evaluation of Gibson, the psychologist expressed his opinion that it was "quite possible" that the Prozac and Thorazine along with the solvents could have put Gibson in a mental state such that he would not have known the difference between right and wrong at the time in question. *Held*:

1. Gibson first complains of the trial court's failure to give certain of his requests for jury instructions.

(a) Gibson asked the court to charge the jury:

> If because of the influence of alcohol or drugs one's mind becomes so impaired as to render him/her incapable of forming an intent to do the act charged, or to understand that a certain consequence would likely result from it, he/she would not be criminally responsible for the act.

But this proposed instruction is not an accurate statement of the law, because the inability to distinguish between right and wrong is not a defense if it is the consequence of voluntary intoxication. *Foster v. State*, 258 Ga. 736, 743 (10) (374 SE2d 188) (1988). *Blankenship v. State*, 247 Ga. 590 (277 SE2d 505) (1981), relied on by Gibson, is not authority to the contrary. The court did not err in refusing to give the requested charge.

(b) Gibson also asked the court to instruct the jury on the defense of insanity by reason of involuntary intoxication under

OCGA § 16-3-4. Since the trial court did charge the jury on the substance of this Code section, this enumeration is without merit.

2. Gibson next contends that the court erred in admitting the knife found in the drainage area into evidence because it was not connected to the crimes charged.

There is no merit in this contention, as the testimony of the officer who had responded to the earlier incident, and other circumstances, provided ample basis for a finding that this knife was the one used by Gibson to stab his wife. Thus, the knife was "connected by testimony to the crime." *Waters v. State*, 169 Ga. App. 290, 294 (4) (312 SE2d 812) (1983). Gibson's other objection will not be considered on appeal as it was not raised at trial. *Price v. State*, 204 Ga. App. 288 (1) (419 SE2d 126) (1992).

3. Primarily on the basis of evidence of his purported insanity, Gibson maintains that the State did not prove his guilt beyond a reasonable doubt.

Under Georgia law, Gibson was presumed sane. *Kirk v. State*, 252 Ga. 133 (2) (311 SE2d 821) (1984). The jury's finding of sanity will be upheld unless the proof of insanity was clear and overwhelming. *Nagel v. State*, 262 Ga. 888, 891 (2) (a) (427 SE2d 490) (1993). It was not. Viewed in the light most favorable to the State, the evidence supports the jury's conclusion that Gibson was not insane. *Taylor v. State*, 261 Ga. 287, 291 (1) (c) (404 SE2d 255) (1991). Under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), the evidence supports Gibson's convictions.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED APRIL 27, 1999.

*Robert M. Bearden, Jr.*, for appellant.
*Charles H. Weston, District Attorney, Myra Y. Christian, Assistant District Attorney*, for appellee.